UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FELICIA CIPOLLA, ALEXIS WOOD, BERNADETTE BLANCHARD, SHIRIN LESSAN, and DENNIS FISHER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TEAM ENTERPRISES, LLC, and NEW TEAM LLC, doing business as TEAM ENTERPRISES,

Defendants.

No. C 18-06867 WHA

**ORDER RE MOTIONS FOR CLASS CERTIFICATION AND LEAVE TO AMEND COMPLAINT**

**INTRODUCTION**

In this putative wage-and-hour class action, plaintiffs move for class certification for two classes of employees, one class subject to binding arbitration, and the other not. Plaintiffs also seek to amend their complaint for the fourth time. For the following reasons, the motions are **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiffs are part-time promotional specialists or "models" for defendants Team Enterprises, LLC and New Team, LLC, marketing companies based in Florida which employ individuals to promote their clients' brands at various locations and events throughout the country. The models' duties are to set up tables at a given venue with the client's product

1  (usually beers and spirits), provide information about the product, give samples to adult
2  customers, and further engage with customers at the venue to encourage the product's purchase.
3  They are instructed on how to dress, how to wear their hair and makeup, and to take numerous
4  photos during the events (TAC ¶ 9-10; Br 5).  Using an online portal called "Brand Trend," the
5  models can pick up shifts that work with their schedule and submit their time.  In the past, the
6  models were independent contractors, but as of January 2015, they have been reclassified as
7  employees.  Plaintiffs claim that the reclassification did not change how they were being treated
8  by defendants, however, and numerous problems allegedly persisted because of an
9  "independent contractor mindset" baked into how defendants treated them (Br. 1).

10  Plaintiffs bought suit in November 2018, alleging violation of the Fair Labor Standards
11  Act and various provisions of the California Labor Code for periods of time both predating and
12  including their reclassification.  Defendants would allegedly require plaintiffs to pick up "kits"
13  prior to the start of events, get to the venues 15 minutes early, do a "recap" of the events after
14  completion of their shifts, and travel back-to-back to numerous events without compensation.
15  Plaintiffs also allege violation of meal-and-rest break requirements, noncompliant wage
16  statements, and lack of reimbursements for necessary expenditures such as personal cellphone
17  and camera usage, mileage, tolls, and parking.

18  Plaintiffs, however, signed an affirmation that they received and reviewed their entire
19  employee manual, which contained within it an arbitration agreement.  Defendants had
20  motioned to compel arbitration due to a delegation clause within the arbitration agreement.  The
21  delegation clause stated:

> Any questions regarding the validity or enforcement of these Dispute Policies shall be delegated and submitted to an arbitrator, including whether the scope of the claim or dispute is subject to arbitration, and whether these Dispute Policies are enforceable as a matter of law.

This Court denied the motion to compel arbitration, holding several unconscionable provisions within the agreement rendered the entire agreement unenforceable (Dkt. No. 25).  Our court of appeals reversed this decision, however, finding the only issue that should have been decided

2

1    was whether or not the delegation clause was valid — if so, the rest of the agreement must be

2    analyzed in arbitration. Thereafter, an order issued staying the case and compelling arbitration

3    (Dkt. Nos. 50, 53).

4          In arbitration, five employees moved to strike the agreement as unconscionable. Four of

5    the five arbiter decisions found the agreement to be so permeated with unconscionability that it

6    was entirely unenforceable. Specifically, Judge Lynn Duryee (Ret.) determined plaintiffs

7    Bernadette Blanchard and Shirin Lessan's agreements were entirely unenforceable, Judge

8    Rebecca Westerfield (Ret.) so held for then-plaintiff Angela Guerrero, and Arbiter Michael

9    Loeb so held for Alexis Wood.[1] Plaintiff Felicia Cipolla's arbiter, Judge Robert Freedman

10   (Ret.), found the agreement to contain several substantively unconscionable provisions, but

11   concluded it could be enforced after striking the provisions in question (Dkt. No. 133-1, Exh. 1–

12   5). Upon motion by plaintiffs, an October 2021 order lifted the stay as to those plaintiffs whose

13   agreements were found to be unenforceable and allowed amendment of their complaint.

14   Following lengthy motion practice, the Court twice permitted plaintiffs to amend their

15   complaint and approved a stipulation to dismiss their first cause of action under the FLSA (Dkt.

16   No. 73, 80, 105, 134).

17         Now, in a renewed motion for class certification, plaintiffs argue the repeated findings

18   of unenforceability by the arbiters should be imputed onto the estimated class of 1,775

19   employees subject to the same agreement (hereafter "arbitration class"). With named plaintiffs

20   Wood, Blanchard, and Lessan as representatives, plaintiffs seek to certify a class of "current and

21   former promotional specialist who worked at any time in California from November 13, 2014,

22   through entry of judgment in this action" with subclasses regarding an off-the-clock work

23   theory, meal/rest break theory, and overtime theory (Br. *i*). Plaintiffs argue defendants should

24   be collaterally estopped from forcing everyone in the class to arbitrate given the repeated arbiter

25   findings of unconscionability. They also argue denial of class certification on the basis of the

26   arbitration agreement would be premature, as the class members are not yet before the court

---

[1] Angela Guerrero was dismissed from the case for unrelated reasons and is no longer a named plaintiff.

3

1  until certification is approved. Thus, the argument goes, the arbitration class should first be
2  certified and then the onus would be on defendants to force each class member to arbitrate
3  should they choose to invoke that affirmative defense (Br. 10). Defendants counter that such is
4  not the law, and each individual must first arbitrate their claims, so no class can be certified.

5      In a separate motion, plaintiffs also move for certification of a class of approximately
6  357 employees who are subject only to defendants' updated arbitration agreement, which was
7  changed on February 15, 2019 (hereafter "updated agreement"). In the updated agreement, the
8  terms expressly exclude pending litigation, so those individuals who signed it are not required
9  to arbitrate their claims in this case. That proposed class definition includes "current and former
10 promotional specialists of defendants who worked at any time in California from January 1,
11 2015, through entry of judgment in this action and who signed an arbitration agreement on or
12 after February 15, 2019." After being allowed 60 days to locate a named plaintiff suitable to
13 represent the updated agreement class, counsel chose Dennis Fisher (Dkt. No. 138). Significant
14 dispute, however, has developed regarding Fisher's suitability as a class representative.
15 Namely, defendants argue Fisher worked only four three-hour events on separate days and was
16 compensated $5.00 for his kit pickups, thus he does not share the same claims regarding off-the-
17 clock work and rest and meal breaks as the rest of the class (Opp. 6, 18). Defendants also point
18 to Fisher's numerous declarations and deposition testimony which allegedly evidence his
19 material falsehoods about his experience with Team Enterprise. In response, plaintiffs argue
20 defendants' own delay in discovery production caused the Fisher inconsistencies alleged, and in
21 any case offer new named plaintiff Jamie Arias as a suitable replacement. To this end, plaintiffs
22 also move for leave to file a fourth amended complaint to add Jamie Arias as a new
23 representative. Defendants oppose. In the mist of this hoopla, plaintiffs also seek to clarify
24 subject-matter jurisdiction and advocate for federal estoppel law to apply rather than California
25 estoppel law. This order follows full briefing and argument.

**ANALYSIS**

27     **1.    SUBJECT-MATTER JURISDICTION.**
28     A question of subject-matter jurisdiction arises because of statements made in plaintiffs'

reply brief. In reply to defendants' opposition to renewed class certification, plaintiffs deny that they ever adequately alleged diversity jurisdiction because they omitted an amount-in-controversy from all of their complaints. Thus, they argued, the only basis for jurisdiction was federal question jurisdiction (Reply 7). Plaintiffs have since flip-flopped in supplemental briefing, now arguing the Court has subject-matter jurisdiction based on the Class Action Fairness Act of 2005 (Dkt. No. 160). The flip-flop stems from a new strategy on the question of whether to apply state versus federal law on the question of estoppel. More about this question below.

This case was not removed from state court; rather, it was filed here under original jurisdiction. The original complaint included a Fair Labor Standards Act claim, plus overlapping state law claims. There were three sources alleged for this Court's subject-matter jurisdiction: federal question, diversity, and supplemental jurisdiction. Then, plaintiffs voluntarily dismissed their FLSA claim. This Court, however, still had supplemental jurisdiction over the state law claims pursuant to Section 1376. Even if federal question or supplemental jurisdiction did not exist, this Court might have had original jurisdiction under the Class Action Fairness Act. The problem is that this was never called out in any complaint or amended complaint as a basis for subject-matter jurisdiction and Rule 8(a) requires that the complaint provide a short and plain statement of the grounds for the Court's jurisdiction. Indeed, CAFA was raised as a basis for possible jurisdiction for the first time by the Court in connection with the recent hearing. Even though CAFA was never mentioned in any of the complaints, this order holds that this omission could be cured by amendment under Section 1653. *See* 28 U.S.C. § 1653 (stating "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). Because the record appears to support plaintiffs can meet the diversity and amount-in-controversy requirements under CAFA, amendment will be allowed rather than dismissing with prejudice. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by amendment." (citation omitted)). Defendants will have the opportunity to answer the amended complaint and challenge the factual basis for CAFA jurisdiction in subsequent

5

1   pleadings.

2           **2.**      **MOTION TO CERTIFY UPDATED AGREEMENT CLASS.**

As previously stated, defendants updated their arbitration agreement in February 2019, to exclude pending litigation. Individuals who signed the updated agreement are not required to arbitrate their claims in this litigation. Plaintiffs move for class certification for this updated agreement class with Dennis Fisher as the only moving party. Fisher was an employee of Teams Enterprise from approximately late 2019 to early 2020 in San Diego. The class claims for this proposed updated agreement class are violations of the California Labor and Business Practices Codes pertaining to (1) off-the-clock work (2) meal and rest breaks and (3) reimbursement for business expenses. *See* Cal. Lab. Code Ann. §§ 226.7, 510, 512, 1194, 2802. For the following reasons, plaintiffs' motion is **DENIED**.

To prevail on a motion for class certification, plaintiff Fisher must show he satisfies all prerequisites enumerated in Rule 23(a), namely (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class. He must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *See Wolin v. Jaguar Land Rover North America*, 617. F.3d 1168, 1172 (9th Cir. 2010). Fisher maintains he satisfies the predominance requirement under Rule 23(b)(3). Because this order finds that Fisher cannot satisfy typicality, the motion fails.

Typicality is fulfilled "if the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are "typical" if they are reasonably co-extensive with those of absent class members. Although the claims need not be substantively identical, the test asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart v. Dukes*, 564 U.S. 338 (2011); *Wolin,* 617 F.3d at 1168. Where there is a danger that absent class

6

1   members will suffer because their representative is preoccupied with defenses unique to him,

2   class certification should not be granted. *See Hanon v. Dataproducts Corp.* 976 F.2d 497, 508

3   (9th Cir. 1992).

4         Here, Fisher cannot satisfy typicality because there is grave risk of impeachment unique

5   to Fisher that would prejudice the class. In connection with the various motions in this case,

6   Fisher signed two sworn declarations in February 2022 and January 2023. These declarations

7   differ from each other in ways significant to the class claims, and both are in conflict with his

8   deposition testimony as well as data produced by defendants. In particular, Fisher's 2022

9   declaration stated:

> Sometimes, I had multiple events in one day. I would take Uber to the next event or walk if the events were close together. I was not paid for the time in between events. If the events were back-to-back, I would not get a meal or rest break because I would have to immediately go from one event to the next and start working continuously through the event. Per company policy, we were not allowed to eat during an event or even take a break. We always had to be "on."

(Fisher Decl. ¶ 7-8). Fisher's updated 2023 declaration, however, makes no statement that he ever worked back-to-back shifts, and does not mention meal or rest breaks at all. When asked in deposition why this statement was taken out of his most recent declaration, Fisher stated "[t]hat was taken out because I could not recollect if that — if that was the same company or not." (Depo. 54; lines 8-13). Fisher explained that he worked for numerous employers doing the same kind of work as he did for defendants, and he could not recall which events he promoted for Teams Enterprise versus other unrelated companies. Data produced by defendants shows that Fisher only worked four events on separate days, and never worked any back-to-back shifts. Fisher admitted he could not recall whether or not he worked more than one event for Teams Enterprise in a day (Depo. 52; lines 9-11). This is an uncertainty and impeachment risk directly related to the meal and rest break class claim. Also, in both declarations, Fisher stated:

> I promoted the brands of companies that sold alcoholic beverages such as beer and spirits . . . I did this by setting up a table with samples of the beverage along with promotional material at the venue. Adult customers would come by the table and I would

7

> encourage them to sample the beverage, provide them with information about the product, and encourage them to buy it.

(Fisher Decl. ¶ 2). Conversely, the produced data shows Fisher never worked any alcohol events for defendants. All of his events were for a cannabis company called "Cresco Labs," and he stated in deposition testimony that he would not have provided samples of the cannabis product to customers. Fisher's inability to remember the nature of the work he did for defendants and the frequency of his shifts put his credibility uniquely into question in a manner that would threaten to preoccupy the focus of the case and harm the class. Further, he does not seem to share the meal and rest break claim with other class members. It is well established that a class representative "must be part of the class and possess the same interest and suffer the same injury as class members." *Dukes*, 564 U.S. at 348. Having only worked four shifts for approximately three hours each, and with no allegation of back-to-back shifts, Fisher does not appear to have been owed any rest or meal breaks at all.

Plaintiffs counter that these differences are irrelevant, emphasizing that Fisher still has the same general interests as the other class members "in recovering their unpaid wages" because he was allegedly unpaid for picking up "kits" prior to the event, arriving fifteen minutes early, and staying late to complete "recaps." These assertions do not cure the unique impeachment risk Fisher faces as a result of his declarations and deposition. Further, these rebuttals do not satisfy his standing on any meal or rest break claims. Plaintiffs attempt to assert that Fisher does have standing for rest and meal breaks claims because he estimates he worked between one and 2.5 additional hours per day without pay (Reply 8). Given Fisher's deposition testimony that he could not recall what shifts he worked for which company, his "guestimations" hold little weight and cannot satisfy standing as to these claims. Because Fisher cannot satisfy typicality, a mandatory requirement of Rule 23(a), his motion for class certification cannot succeed.

Recognizing Fisher is less than ideal, counsel has moved to file a fourth amended complaint substituting Jamie Arias, a Californian who has been employed by defendants from approximately March 2019 to present. Plaintiffs maintain that Ms. Arias is an easy fix to any problems posed by Mr. Fisher as a representative for the updated agreement class, because she

1   "has worked many more events than Mr. Fisher, worked alcohol events, worked back-to-back
2   events with only 30 minutes scheduled to drive between them, and has a more varied work
3   experience than does Mr. Fisher" (Br. 7).  Defendants oppose, criticizing counsel's lack of
4   diligence for not realizing Fisher's deficiencies sooner and arguing that they had access to
5   information regarding Arias since February 2022 (Opp. 11).

6       Plaintiffs' motion to amend will be **ALLOWED** provided plaintiffs' first reimburse defendants
7   a total of **$11,415.90** for all the time wasted defending the Fisher motion for class certification
8   (Dkt. No. 159 at 26).  The Fourth Amended complaint should set forth the basis for subject-
9   matter jurisdiction with specificity and clarity.  This can be done only after the reimbursement
10  amount has been paid.  After the fourth amended complaint is filed, plaintiffs may file a new
11  motion for class certification with Jamie Arias as a class representative, whereupon defendants
12  may depose Ms. Arias and file an opposition.  Counsel have **42 DAYS** to get all this done.

13      **3.**     **MOTION TO CERTIFY ARBITRATION CLASS.**

14      Previously, this Court thought it would be useful to have a question on a class-wide
15  basis as to whether defendants should at some point be estopped from enforcing their arbitration
16  agreements after so many findings of unconscionability in private arbitrations.  Under
17  California law, however, "a private arbitration award, even if judicially confirmed, can have no
18  collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the
19  particular case, that such a consequence should apply." *Vandenberg v. Superior Ct.*, 21 Cal. 4th
20  815, 834 (1999).  Thus, as both parties acknowledge, if California law applies, nonmutual
21  offensive collateral estoppel cannot be applied in our case to prohibit defendants from enforcing
22  their arbitration agreements toward each and every class member —  there being no prior
23  agreement to do so.  It is well established that "federal courts sitting in diversity apply state
24  substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S.
25  415, 427 (1996).  Plaintiffs' latest contention to avoid application of this California Supreme
26  Court precedent is to argue collateral estoppel should be considered "procedural" rather than
27  "substantive," in this case, and thus federal estoppel law should be applied instead under the
28  *Erie* doctrine (Supp. Br. 4).  In doing so, plaintiffs seem to abandon their prior position that

9

1  state choice of law should not apply because this Court is not sitting in diversity jurisdiction. In
2  any case, plaintiffs argument cannot prevail.
3  Under *Erie*, the Supreme Court has held "when a federal court exercises diversity or
4  pendent jurisdiction over state-law claims, the outcome of the litigation in the federal court
5  should be substantially the same, so far as legal rules determine the outcome of a litigation, as it
6  would be if tried in a state court." *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citing *Guaranty
7  Trust Co. v. York*, 326 U.S. 99, 109 (1945)). This so-called "outcome-determination test" is not
8  mechanically applied, but rather guided by adherence to the two classic aims of *Erie*: the
9  discouragement of forum-shopping and avoidance of inequitable administration of the laws.
10 *See Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1270 (9th Cir.
11 2022). To hold here that plaintiffs are allowed to wield nonmutual offensive collateral estoppel
12 against defendants where they would otherwise be precluded from doing so in state court would
13 disappoint both *Erie* aims. This would encourage the precise type of forum-shopping *Erie* was
14 created to discourage as it would bless class members with a right to pursue a cause of action
15 that would otherwise not exist outside the confines of arbitration. Pursuant to the arbitration
16 agreement, the binding delegation clause as to the question of arbitrability, and California
17 Supreme Court precedent, potential class members would first have to attempt to arbitrate their
18 claims and receive a ruling on enforceability before being freed into the federal court. Despite
19 plaintiffs' repeated arguments to the contrary, this Court sees no need to wait until after class
20 certification to address the elephant in the room — an elephant capable of dooming all class
21 claims as to every class member besides the named representatives. Because it appears
22 offensive use of collateral estoppel is not allowed in the manner plaintiffs seek under state law,
23 which will inevitably be applied in our case, certification of the arbitration class is **DENIED**.

## CONCLUSION

25 For the reasons stated above, plaintiffs motion for class certification as to the updated
26 agreement class is **DENIED**. Provided that plaintiffs pay defendants **$11,415.90** within **14
27 CALENDAR DAYS** of this order, plaintiffs motion for leave to file a fourth amended complaint is

**GRANTED,** which must be done within **21 CALENDAR DAYS** of this order.  Plaintiffs motion for class certification as to the arbitration class is **DENIED**.

**IT IS SO ORDERED.**

Dated:  March 26, 2023.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE