UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA CIPOLLA, ALEXIS WOOD, BERNADETTE BLANCHARD, SHIRIN LESSAN, DENNIS FISHER, and JAMIE ARIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEAM ENTERPRISES, LLC, NEW TEAM LLC, doing business as TEAM ENTERPRISES,<br><br>Defendants. | No. C 18-06867 WHA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this wage-and-hour putative class action, defendants move to dismiss plaintiffs' fourth amended complaint for lack of subject-matter jurisdiction. Plaintiffs in turn move for class certification. For the reasons provided herein, the motion to dismiss is **DENIED** and the motion for class certification is **DENIED IN PART AND GRANTED IN PART**.

**STATEMENT**

The underlying facts have already been recounted elsewhere (Dkt. No. 162). Only those facts relevant to understanding the motions at issue will be repeated. Plaintiffs are part-time models called "promotional specialist" based in California. They bring suit against their employers, two Florida-based marketing companies, collectively "Team Enterprises," for various alleged violations of the California Labor Code.

Promotional specialists go to various venues, set up tables, and advertise products during social events. The products — usually beers and spirits — are provided by third-party clients who have contracted with Team Enterprises. The goal is to encourage the product's purchase by interacting with potential customers, providing samples, and taking numerous photos.

Using an app called "Brand Trend," the promotional specialists are free to pick up any shift that works with their schedule at any location and submit their time after each event. Shifts are typically three hours long but can be more or less time depending on the particular event. Two promotional specialists normally attend an event — one acting as a "team lead" and the other working as support. The team lead often must retrieve a "kit" a day or two before the event begins, which contains promotional materials like posters, signage, banners, and branded swag. Team Enterprises pays a flat fee of five dollars to team leads for retrieving these kits but does not keep track of the dates or distances promotional specialists travel to do so, which can vary (Br. 13). At the end of each event, the models must complete a "recap" and upload it to the Brand Trend app. When it comes time to submit hours after the shift, the app pre-populates the start and end times of the given event but provides an option to manually alter the times as needed before pressing submit. All promotional specialists use their personal cellphones to access the Brand Trend app and complete their required job duties.

In their fourth amended complaint, plaintiffs allege, *inter alia*, that they work off-the-clock regularly, are not paid for overtime work, are not provided required meal and rest breaks (or required premiums if such breaks are missed) and are not reimbursed for business expenses (Fourth Amd. Compl. 5–6). A prior order denied plaintiffs' previous motion for class certification due to the failure of the then-class representative to satisfy typicality under Rule 23 (Dkt. No. 162). Plaintiffs were granted leave, however, to find a more suitable named plaintiff and file a fourth amended complaint. Of note, all promotional specialists signed an arbitration agreement, but, as of February 2019, an updated agreement created a carve-out for "pending litigation," such as this civil action. Thus, the class proposed in this motion involves approximately 357 employees who signed the 2019 agreement and are free to proceed with these claims.

1    Defendants now move to dismiss the newly filed complaint due to lack of subject-matter
2    jurisdiction and plaintiffs move for class certification. This order follows full briefing and a
3    hearing.

**ANALYSIS**

5    Defendants challenge subject-matter jurisdiction on the grounds that the new complaint
6    does not adequately allege a five-million-dollar amount in controversy sufficient for jurisdiction
7    under the Class Action Fairness Act. Specifically, defendants argue plaintiffs' jurisdictional
8    statement is facially deficient because it only provides an estimated amount of 1,800 class
9    members and states they have an "average hourly rate of at least $30 per hour" (MTD 17). As
10   to the factual challenge, both parties agree that the amount in controversy must have been met at
11   the time of the original complaint, (MTD 15–16, Opp. 15 n.3), but both now also rely on
12   experts who estimate damages based on class-wide data that was not available at the time of the
13   original complaint. Defendants' expert says at most only $3,109,848 can be recovered while
14   plaintiffs' expert says $5,872,500 can be recovered (*Compare* Dkt. No. 174-2 *to* Dkt. 171-1).

15   With some misgivings, this order holds the five-million-dollar threshold is met and
16   therefore CAFA jurisdiction existed under 28 USC 1332(d)(2) when this action began. Given
17   that plaintiffs did not have access to the full class profile data at the time of the complaint, it is
18   unfair to criticize the estimate as made in bad faith or insufficient merely because it does not
19   correspond exactly with the data now revealed. On the face of the complaint, an inference using
20   basic arithmetic can show satisfaction of the amount in controversy.

21   Defendants' "factual challenge" is equally unpersuasive. Plaintiffs' expert calculations
22   plausibly satisfy the amount requirement even if certain assumptions are reduced. The
23   jurisdictional statement does not frustrate our local rules or the past order's directive to be
24   "clear and concise."

25   Lastly, Jamie Arias is an adequate representative. Defendants make a mountain out of a
26   molehill in attempting to discredit the slight inconsistencies in her declarations as compared to
27   her deposition. These small errors do not rise to the level of impeachment that would prejudice

United States District Court
Northern District of California

the class. At trial, though, defense counsel may try to impeach her. Defendants' motion to dismiss is **DENIED**.

With respect to the motion for class certification, this order finds there is no practical class-wide method of proof for most of the smorgasbord of wage and hour claims. Three narrow issues may be certified, however, using defendants' class profile data to accurately identify those allegedly entitled to relief.

To prevail on a motion for class certification, plaintiffs must satisfy all prerequisites under Rule 23(a), namely, (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Implicit in the numerosity requirement is, as a practical matter, the necessity that the class be clearly ascertainable. Specifically, the description of the class "must be definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (Judge Audrey B. Collins). Plaintiffs must also satisfy predominance under Rule 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiffs move on three theories of claims: (1) failure to pay promotional specialists for "off-the-clock" work; (2) failure to provide meal and rest breaks (or failure to pay associated premiums when such breaks are missed) and (3) failure to provide reimbursement for business expenses (Br. 3–4, 21–22).[1] Within each theory, plaintiffs propose a series of different scenarios that would allegedly entitle promotional specialists to relief. For the "off-the-clock" theory, plaintiffs argue uncompensated time occurred due to promotional specialists retrieving kits before events, arriving 15 minutes early, completing recaps, conducting post-event

---

[1] At the hearing, plaintiffs stated they were also moving for class certification on overtime claims, but there is no argument reflected in their motion on such claims, so that is verboten.

4

breakdowns, and more. For the meal and rest breaks, plaintiffs say they were routinely not provided meal and rest breaks (and received no premiums) when they worked shifts less than 3.5 hours but were scheduled back-to-back with little or no time in between (Br. 9, 13). As to the reimbursement theory, plaintiffs say defendants never paid for mileage, parking, tolls, or other costs accrued by retrieving kits or for using their personal cellphones to access the Brand Trend app and take pictures during events. We examine each theory in turn.

Plaintiffs argue defendants maintain a "policy and practice" of only paying for scheduled time rather than actual hours worked. This is illustrated, the argument goes, by payroll records which suspiciously match the exact start and end times of the events in question 86% of the time. In reality, plaintiffs say the promotional specialists were required to show up at least fifteen minutes early to scheduled events, perform "recaps" after the events concluded (which could sometimes take up to an hour), retrieve "kits" before an event, and complete other duties all with either no compensation or a flat rate of five dollars regardless of how long these tasks took (Br. 9–11). Defendants counter that their policies are facially lawful and plaintiffs allege here "a de facto" unlawful policy that relies on individualized issues, unsuitable for resolution on a class-wide basis (Opp. 21).

There is no class-wide method to prove liability for these scenarios. Defendants' official policy was for promotional specialist to use the Brand Trend app to verify their start and end times, which could be edited before submitting their time. Although there is some evidence of managers sending emails to arrive fifteen minutes earlier to certain events, such emails do not rise to the level of a class-wide policy. Further, defendants did not track the dates or locations for each kit retrieval, so there is no way of administratively determining who would be entitled to relief for such tasks on a class-wide basis. An employee is not punished by being unable to prove the precise extent of uncompensated work, but it is his burden to prove "he has in fact performed work for which he was improperly compensated" and to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016). Here, no "just and reasonable inference" can be made because not all promotional specialists in fact performed the

5

alleged uncompensated work. That is, some promotional specialists were never "team leads" required to retrieve a kit, and some were never told (or never abided by) an instruction from a manager to arrive fifteen minutes early to an event. Similarly, although all promotional specialists were required to complete "recaps," there is no standardized record or method of telling how long these recaps took or if a five-dollar payment was inadequate for all members of the proposed class. This is a "fatal dissimilarity" amongst potential members that discourages class certification here. *Id.* at 457.

Certain issues, however, may be addressed and resolved using defendants' class profile data. Certification of these issues on a class-wide basis is proper because their adjudication would "materially advance[] the disposition of the litigation as a whole." *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017).

*First*, when a promotional specialist chooses to work two or more shifts in a single day, does the company policy denying a meal or rest break violate the California labor laws?

California law requires a meal break of at least 30 minutes after five hours of work. Cal. Labor Code § 512(a). A rest break of at least 10 minutes is also required for every four hours worked. Wage Order 4-2001 § 12. Failure to provide these breaks requires a premium payment to the employee of an additional hour of pay at their regular rate of compensation. Cal. Labor Code § 226.7(c). Defendants' produced payroll records indicate no premiums were ever paid for missed breaks (Leash Decl. ¶ 12). Further, defendants admit "[b]ecause most events are less than 3.5 hours, the [Brand Trend] system defaults to 'no'" in response to questions of whether a break was offered or taken (Opp. 3). Together, these facts show a standardized practice of denying meal and rest breaks for shifts that were less than 3.5 hours, regardless of how many total shifts that particular promotional specialist might have picked up cumulatively that day.

The promotional specialists who picked up two or more shifts in a day can be identified from company records. The question is, given the staggered "employees' pick" scheduling structure at issue, whether promotional specialists are entitled to rest and meal breaks for the *cumulative* time they work in a particular day? If the legal answer is "no," then that will be the

6

end of it. If the legal answer is "yes," then the company records can be used to sort out who deserves compensation.

*Second*, in a related vein, the following issue can be decided on a class-wide basis, namely, in short-duration scenarios, should the time in-between events in a single day be deemed "on-the-clock"? For example, if a promotional specialist signs up for a nine to noon gig and then signs up for a 12:30pm to 3:30pm event elsewhere in the same city, is the thirty minutes in between gigs compensable? What if the event is back-to-back at the same venue with no time in between? What if the in-between time is one hour? Several hours? This legal issue can be decided on a class-wide basis. Thereafter, the company records can indicate who fits within the cut-off (if one is found to exist) for being considered "on-the-clock" and thus entitled to compensation.

*Third*, the following issue will be certified for class treatment: are promotional specialist entitled to reimbursement for the "cost" of putting the company app "Brand Trend" on their phones, which is used to sign up for events and complete job duties? If the legal answer is "no" then all class members will be bound by this answer. If the legal answer is "yes," then the company will provide reimbursement for the "costs." All promotional specialists have downloaded the app (else they can get no work). It is conceivable, however, that this cost is so *de minimis* as to be nonrecoverable. This question, too, may be resolved on a class-wide basis.

Reimbursement related to driving expenses allegedly accrued while picking up kits (*i.e.,* mileage, tolls, and parking fees) will not be certified due to the difficulty in discerning who in fact picked up kits, as described above.

No other issues or theories of recovery will be certified. The remaining scenarios proffered by plaintiffs would result in getting into a myriad of hypotheticals that would be too messy and non-amenable to a class-wide method of proof.

**CONCLUSION**

For the following reasons, the defendants' motion to dismiss is **DENIED**. Plaintiffs' motion for class certification is **DENIED IN PART AND GRANTED IN PART**. Trial shall take place on **MONDAY, JANUARY 22, 2024, AT 7:30 AM** with a final pretrial conference on **WEDNESDAY, JANUARY 17, 2024**.

Counsel shall submit a proposed form of class notice and a plan for distribution by **TUESDAY, JULY 25 AT NOON**. Please do not waste time with motions to reconsider or to "clarify."

**IT IS SO ORDERED.**

Dated: July 3, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE