EDWARD J. WYNNE, SBN 165819
GEORGE R. NEMIROFF, SBN 262058
*ewynne@wynnelawfirm.com*
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd, Suite 3G
Larkspur, CA 94939
Telephone:     415.461.6400
Facsimile:     415.461.3900

BRYAN J. MCCORMACK, SBN 192418
*bryan@mcelawfirm.com*
MCCORMACK LAW FIRM
1299 4th Street, Suite 505A
San Rafael, CA 94901
Telephone:     415.925.5161
Facsimile:     415.651.7837

Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA CIPOLLA, ALEXIS WOOD, BERNADETTE BLANCHARD, SHIRIN LESSAN, DENNIS FISHER, and JAMIE ARIAS, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>TEAM ENTERPRISES, LLC; NEW TEAM LLC, doing business as TEAM ENTERPRISES,<br><br>          Defendants. | Case No. 3:18-cv-06867-WHA<br><br>**PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Date:          June 13, 2024<br>Time:          8:00 a.m.<br>Dept:          Courtroom 12, 19th Floor<br>Judge:        Hon. William H. Alsup |

1    <u>**NOTICE OF MOTION AND AMENDED MOTION**</u>

2    TO THE COURT AND ALL INTERESTED PARTIES:

3    PLEASE TAKE NOTICE THAT on June 13, 2024 or as soon thereafter as counsel may be

4    heard, in the courtroom of the Hon. William H. Alsup, United States District Court for the Northern

5    District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 12,

6    19th Floor, plaintiffs will and hereby do respectfully move the Court for preliminary approval of the

7    proposed class action settlement.

8    Plaintiffs respectfully request that the Court (1) grant preliminary approval for the proposed

9    class action and PAGA settlement; (2) authorize the mailing of the proposed notice to the class of the

10   settlement; and (3) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

11   Plaintiffs make this motion on the grounds that the proposed settlement is within the range of

12   possible final approval, and notice should, therefore, be provided to the class. This Motion is based

13   upon this Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA

14   Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of

15   Edward J. Wynne, the Declaration of Bryan J. McCormack, the Declaration of Yesenia Garcia Perez,

16   the Class and PAGA Settlement and Release Agreement, any oral argument of counsel, the complete

17   files and records in the above-captioned matter, and such additional matters as the Court may

18   consider.

19

20   Dated:  May 9, 2024                    MCCORMACK LAW FIRM

21                                          /s/ Bryan J. McCormack
                                            Bryan J. McCormack
22                                          Class Counsel

23

24

25

26

27

28

- 1 -

PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-cv-06867-WHA

1

# TABLE OF CONTENTS

2

3      NOTICE OF MOTION ……………...…………………………………………...…...…1

4      I.      INTRODUCTION ........................................................................................................2

5      II.     PROCEDURAL STATEMENT ..................................................................................2

6      III.    STATEMENT OF FACTS RELEVANT TO THE PROPOSED SETTLEMENT ...................5

7      IV.     SETTLEMENT TERMS ............................................................................................7

8              A.      Settlement Consideration..............................................................................7

9              B.      Class Definition..............................................................................................8

               C.      Class Representative and Class Counsel .....................................................8

10             D.      Notice Procedure ...........................................................................................9

11             E.      Plan of Allocation ..........................................................................................9

12                     1.  Net Settlement Fund...........................................................................9

13                     2.  Attorney's Fees, Costs and Enhancements .....................................9

14                     3.  LWDA payment.................................................................................10

15                     4.  Settlement Administrator Fees.......................................................10

16     V.      THE STANDARDS FOR PRELIMINARY APPROVAL ARE SATISFIED .......................10

17             A.      The Standard for Preliminary Approval ..................................................10

               B.      Strength and Weaknesses of Plaintiff's Case ...........................................12

18             C.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation.............13

19             D.      The Amount Offered In Settlement ...........................................................13

20             E.      Extent of Discovery and Investigation Completed....................................16

               F.      Experience and View of Counsel ...............................................................17

21

22     VI.     THE PROPOSED CLASS NOTICE IS THE BEST NOTICE PRACTICABLE ..................17

23     VII.    CONCLUSION ..........................................................................................................18

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Boyd v. Bechtel Corp.,*

4

485 F. Supp. 610 (N.D. Cal.1979) .......................................................................................13

5

*Churchill Village, LLC v. General Electric,*

6

361 F.3d 566 (9th Cir. 2004) .............................................................................................17

7

*Gautreaux v. Pierce,*

8

690 F.2d 616 (7th Cir. 1982) .............................................................................................11

9

*Hammon v. Barry,*

10

752 F. Supp. 1087 (DDC 1990) .........................................................................................17

11

*Hanlon v. Chrysler Corp.,*

12

150 F.3d 1011 (9th Cir. 1998) ...........................................................................................11

13

*In re Armored Car Anti - Trust Litigation,*

14

472 F. Supp. 1357 (N.D. Ga. 1979) ..................................................................................17

15

*In re General Motors Corp.,*

16

55 F.3d 768 (3rd Cir.1995) ................................................................................................13

17

*In re Traffic Executive Association-Eastern Railroads,*

18

627 F.2d 631 (2d Cir. 1980) ..............................................................................................11

19

*Linney v. Cellular Alaska Partnership,*

20

151 F.3d 1234 (9th Cir. 1998) ...........................................................................................10

21

*Officers for Justice v. Civil Service Comm'n,*

22

688 F.2d 615 (9th Cir. 1982) .............................................................................................10

23

*Overton v. Hat World,*

24

2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) ....................................................18

25

*Sommers v. Abraham Lincoln Federal Savings & Loan Association,*

26

79 F.R.D. 571 (E.D. Pa. 1978) ..........................................................................................17

27

*Steinberg v. Carey,*

28

470 F. Supp. 471 (NY 1979) ..............................................................................................17

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) .................................................................................12

*Vizcaino v. Microsoft Corp.,*

    290 F.3d 1043 (2002) ...........................................................................................9

*Wal-Mart Stores v. Visa U.S.A.,*

    396 F.3d 96 (2nd Cir. 2005) ...............................................................................11

**Statutes**

Cal. Labor Code § 2699 ...................................................................................3, 10

Cal. Labor Code § 2802 ......................................................................................12

Fed. R. Civ. P. 23 (c)(3) .......................................................................................17

Fed. R. Civ. P. 23 (e)(1) .......................................................................................17

Fed. R. Civ. P.23(c)(2)(B) ....................................................................................17

1

## I.   INTRODUCTION

Plaintiffs Jamie Arias, Felicia Cipolla and Alexis Wood ("Plaintiffs") seek preliminary approval of a $500,000 non-reversionary class action and PAGA settlement between Plaintiffs and Defendants Team Enterprises, LLC and New Team, LLC ("Defendants" or "Team") to settle the meal and rest break reimbursement, business expenses, and related claims on behalf of the certified class of Promotional Specialists ("PSs"). This settlement includes $400,000 for the class claims and $100,000 for the Private Attorneys General Act ("PAGA") claims.  Plaintiff Arias is the representative for the class settlement while Plaintiffs Cipolla and Wood are the representatives for the PAGA settlement.

Plaintiffs have addressed each of the concerns raised by the Court at the original motion hearing on April 24, 2024.  The proposed settlement agreement has been revised as follows:  (1) the class release has been narrowed to release only the certified claims; (2) the class formula has been revised so that the class members with the strongest claims receive the bulk of the settlement proceeds; (3) the attorney fees distribution has been revised so that 50% of the fee award is paid after all settlement checks have been distributed or escheated to the California Secretary of State Unclaimed Property Division; and (4) the settlement administrator will maintain the settlement website until all settlement checks have been distributed or escheated to the California Secretary of State Unclaimed Property Division.  In addition, the parties revised the settlement agreement to reflect that the class period begins on February 15, 2019, rather than January 1, 2015 as specified in the original agreement.[1]

As the proposed settlement is fair, reasonable and adequate, and the standards for certification of the proposed class in the context of a settlement are satisfied, Plaintiffs request that this Court preliminarily approve the proposed settlement.  This motion is unopposed.

## II.   PROCEDURAL STATEMENT

On August 23 2018, Plaintiffs Cipolla and Wood filed and served the Labor and Workforce Development Agency ("LWDA") with written notice of their intent to file a lawsuit pursuant to Labor

---

[1] As all calculated damages for the certified class (set forth in the earlier motion) accrued in the period after February 15, 2019, this date change does not affect the number of class members or the estimated recovery.

1   Code § 2699, *et seq*. On the same date, they served Defendants with written notices via certified mail

2   of their intent to file a lawsuit pursuant to Labor Code § 2699, *et seq*.[2]

3         On November 13, 2018, Plaintiffs Cipolla and Wood filed their Rule 23 class action complaint

4   (the "Complaint") against Defendants in United States District Court for the Northern District of

5   California. (Dkt. No. 1.)

6         On May 15, 2019, Defendants filed their Notice of Motion and Motion to Compel Plaintiffs

7   Complaint to Arbitration and Stay Judicial Proceedings (the "Motion to Compel Arbitration"). (Dkt.

8   No. 17.)

9         On April 7, 2019, this Court issued its order denying the Motion to Compel Arbitration. (Dkt.

10   No. 25.) The Court ruled that the arbitration agreement was permeated with unconscionability and

11   refused to enforce the agreement. (Dkt. No. 25.)

12         On May 3, 2019, Defendants filed their Notice of Appeal of the Court's order denying the

13   Motion to Compel Arbitration. (Dkt. No. 31.)

14         On June 24, 2020, the Ninth Circuit, in a split decision, issued its opinion reversing this Court's

15   denial of the Motion to Compel Arbitration and remanding it for consideration of the delegation clause.

16   (Dkt. No. 48.) In particular, the panel found that Defendants, despite having requested and received a

17   ruling on the merits, did not waive the issue of the delegation clause and remanded it to the District

18   Court for further consideration.

19         On November 5, 2020, the Court issued its Order Compelling Arbitration, Staying Case and

20   Setting Status Conference. (Dkt. No. 51.)

21         On November 17, 2020, Cipolla and Wood filed arbitration demands with JAMS, and

22   commenced employment arbitration against Team Enterprises.

23         On July 29, 2021, Plaintiffs Wood and Cipolla moved this Court for an order lifting the stay

24   and allowing two additional individuals, Bernadette Blanchard and Shirin Lessan, to be added as

25   putative named plaintiffs to the class action allegations. (Dkt. No. 56.)  The motion was granted a few

26   months later.

27

28   [2]  Wynne Decl., ¶10.

On September 13, 2021, the arbitrator in Wood ruled that the arbitration agreement was unenforceable as it was permeated with unconscionable provisions.[3]

On Nov 26, 2021, Plaintiff's filed a motion for leave to file a Second Amended Complaint to address issues raised by Defendants in various motions.  The Court granted such leave. (Dkt No. 80.)

Plaintiffs brought a Motion for Class Certification that was heard on October 19, 2022. (Dkt. No. 95.) The Court denied the motion without prejudice, directing Plaintiffs to address estoppel issues and to file a separate motion regarding a subclass of Promotional Specialists who signed the 2019 Arbitration Agreement. (Dkt. No. 123.)

Following the October 19th hearing and consistent with the Court's instruction regarding adding a class representative who signed the 2019 arbitration agreement for a new class certification motion, Plaintiff filed a Third Amended Complaint on December 12, 2022 to add Dennis Fisher as a party; to add a subclass comprised of Promotional Specialists who signed an arbitration agreement on or after February 15, 2019; and to make other miscellaneous changes, which was granted on December 15, 2022. (Dkt. Nos. 132 and 134.)  The Third Amended Complaint was filed that same day.  (Dkt. No. 135.)

On December 13, 2022, Plaintiffs filed a Renewed Motion for Class Certification addressing the estoppel issue and Defendants' potential affirmative defenses. (Dkt. No. 133.)

On January 9, 2023, Plaintiffs filed a Motion for Class Certification of the 2019 Arbitration Class.  On March 26, 2023, the Court denied this motion finding that Dennis Fisher was not an adequate class representative.  The Court also denied the Motion for Class Certification addressing the estoppel issue.  In its Order, the Court allowed Plaintiffs to file a Fourth Amended Complaint with Jamie Arias as a class representative.  (Dkt. No. 162.)

On April 13, 2023, Plaintiffs filed a Fourth Amended Complaint, which includes various wage and hour causes of action including failure to pay for all time worked in violation of the California Labor Code and failure to provide legally-compliant meal and rest breaks. (Dkt. No. 164.)

On July 3, 2023, after considering Plaintiffs' fourth motion for class certification, the Court

---

[3]  Wynne Decl., ¶11.

certified several issues for Rule 23 class treatment, including the following: (1) when a promotional specialist chooses to work two or more shifts in a single day, does the company policy denying a meal or rest break violate the California labor laws?; and (2) in short-duration scenarios, should the time in-between events in a single day be deemed "on-the-clock"? (Dkt. No. 185 at 6-7.)  The third certified issue regarding whether the class members are entitled to reimbursement for downloading the Brand Trend application has been abandoned by Plaintiffs due to the *de minimis* value of this claim.[4]

On October 9, 2023, with this Court's permission, the parties mediated this case with experienced mediator Mark Peters of Duckworth and Peters.  The case did not settle at the initial mediation.  However, the parties continued discussions and scheduled a second mediation for December 18, 2023.  With the help of the mediator, the parties settled the case a few days after the mediation.[5]  The parties have now documented their proposed settlement and hereby put it before the Court for review.

On January 19, 2024, Plaintiffs filed their initial Motion for Preliminary Approval of Class Action and PAGA settlement.  Defendants did not oppose this motion.

On April 24, 2024, the parties attended a hearing on Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA settlement.  At the hearing, the Court stated that it could not approve the proposed settlement because the class release was too broad and the class formula did not adequately allocate the settlement proceeds to class members with the strongest claims.  In addition, the Court suggested that half of the attorney fees be distributed after all settlement checks have been distributed or escheated to the California Secretary of State Unclaimed Property Division and the settlement website maintained through that date as well.

Between April 24, 2024 and May 7, 2024, Class counsel met and conferred and addressed all the issues raised by the Court.[6]

### III.    STATEMENT OF FACTS RELEVANT TO THE PROPOSED SETTLEMENT

Defendants operate as a marketing company that employs promotional specialists to promote

---

[4]  Wynne Decl., ¶12.
[5]  Wynne Decl., ¶13.
[6]  Wynne Decl., ¶16.

- 5 -

PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

its clients' brands through field marketing programs at local bars, grocery stores, restaurants and special events including sporting events. Promotional specialists mostly promote and sell alcoholic beverages of Defendants' clients.

Defendants employed Plaintiffs as Promotional Specialists in California. The general duties of the Promotional Specialist position involve promoting clients' brands through field marketing programs at on-premise, off-premise, and special events. Promotional Specialists are predominantly younger female employees—many of whom have modeling experience—that promote alcoholic beverages (or similar products) at bars, restaurants and other outdoor events such as sporting events or music festivals. Many of these outdoor events have "brand experiences" where Defendants' Promotional Specialists help drive sales of the products they are selling, such as Blue Moon beer, Cazadores tequila and Bacardi rum.

Defendants reclassified all Promotional Specialists from independent contractor status to employees effective January 1, 2015, which is very close to the beginning of the statutory damages period for the class claims. Although Promotional Specialists are paid on an hourly basis, Defendants did not pay for all their hours worked and paid below minimum wage for certain tasks.

Events were frequently scheduled in the evenings – mostly Thursday through Sunday – and on the weekends during the day. Events could be one hour or up to three hours or more. Some schedules would have events scheduled back-to-back at different locations sometimes with little or no time in between events.

Prior to the event, Promotional Specialists are sometimes required to pick up a promotional kit. They might have to pick up the kit from the manager's house, a storage unit or a random location like a parking lot. The kit consists of promotional material like posters, signage, banners, and branded give-away items. Sometimes they pick up the kit from the event manager's house, warehouse or at a restaurant. The Promotional Specialists use their own vehicle to make the pick-up. The pick-up sometimes happens a day or two prior to the event and other times on the day of the event. Promotional Specialists are paid a flat rate of $5.00 for picking up a kit regardless of how much time it takes.

On the day of the event, Promotional Specialists are required to show up at least 15 minutes prior to the event. The event managers instructed the Promotional Specialists to "Be on time – on time

meaning 15 minutes early." Prior to the event, Promotional Specialists would meet the manager of the venue, get into uniform, and set up. Promotional Specialists are not paid for this time.

Sometimes, Promotional Specialists have multiple events in one day. They typically drive their personal vehicle to the next event or walk if the events are close together. Promotional Specialists are not paid for the time in-between events. If the events are back-to-back, Promotional Specialists do not get a meal or rest break because they have to immediately go from one event to the next and start working continuously through the event. They are not allowed to take a break during events. After an event, the Promotional Specialists must clean up and pack all the material up. They are not paid for their time after the event ended.

Within 24 hours of an event, Promotional Specialists are required to complete a "recap." A recap consists of uploading photos they are required to take during the event. They are also required to input information about the number of customers, samples handed out and purchases. Some recaps required putting in comments. The Promotional Specialists entered this information through their computer at home or through their personal mobile phone. Some promotional specialists report that Team did not pay anything for the time spent doing the recap and others report that they paid $5.

There are 1,015 members[7] of the certified class of employees who signed the 2019 Arbitration Agreement, and 1,718 current and former promotional specialists covered by the PAGA claims in this action.[8]

## IV.    SETTLEMENT TERMS

The details of the Settlement are set forth in the Class and PAGA Settlement and Release Agreement.[9] A summary is set forth below:

### A.    Settlement Consideration

In return for a release of all claims, Defendants shall create a non-reversionary $500,000 gross

---

[7]  The earlier estimate of 350 class members provided to the Court on October 19, 2022 was much lower due to the fact that Defendants were using data that had not been updated since December 2021; after updating their data (presumably to account for new hires) Defendants have identified 1,015 members. (Garcia Perez Decl., ¶¶ 3-4, Ex.1.)
[8]  Wynne Decl., ¶¶20-21.
[9]  Wynne Decl., ¶17, Exhibit 1.

settlement fund. This settlement includes $400,000 for the class claims and $100,000 for the PAGA claims.[10]  After certain deductions identified below, all Class and PAGA members will be paid on a *pro rata* basis based on the number of events they worked for Defendants in California during the settlement period, with additional weight for the number of times they worked two or more shifts in one day.[11]  Approximately 90% of the settlement funds will be paid to class members with the strongest claims (the bulk of those funds going to those who worked the most multiple shifts according to Defendants' scheduling data).  Further, the settlement fund will be placed into an interest-bearing account with all interest earned inuring to the benefit of the Class.[12]

The deductions from the gross settlement fund include attorneys' fees and costs, class representative service awards, and payment to the LWDA for settlement of the PAGA penalties claim.[13]

**B.    Class Definition**

The proposed settlement class definitions are as follows:

(Class)
Current and former Promotional Specialists employed by Team who worked at any time in California from February 15, 2019 to August 3, 2023 and who signed an arbitration agreement with Team on or after February 15, 2019.

(PAGA Claims)
All individuals who were employed as Promotional Specialists for Team in California at any time between August 23, 2017 and the Preliminary Approval Date.[14]

**C.    Class Representative and Class Counsel**

In certifying the Class, the Court appointed Plaintiff Jamie Arias as the class representative and her counsel, Edward J. Wynne, Wynne Law Firm, and Bryan McCormack, McCormack Law Firm, as class counsel.[15]

---

[10]  Wynne Decl., ¶18.
[11]  Wynne Decl., ¶20.
[12]  Wynne Decl., ¶19.
[13]  Wynne Decl., ¶22.
[14]  Wynne Decl., ¶23.
[15]  Wynne Decl., ¶24.

**D.      Notice Procedure**

Subject to Court approval, the parties have agreed on Phoenix Settlement Administrators as the Settlement Administrator. After updating the database provided by Defendants through the National Change of Address database, the Settlement Administrator will email the Class Notice to each class member. For any Class Member for whom Defendants do not have valid email addresses, the Settlement Administrator will mail the notice via first class mail. Because this is not a claims-made settlement, Class Members will not be required to make a submission to participate in the settlement. In addition, the Settlement Administrator will establish a website and a toll-free telephone number for Class Member inquiries.[16]

**E.      Plan of Allocation**

**1.      Net Settlement Fund**

The Net Settlement Fund is estimated to be approximately $202,500, the vast majority of such going to class members who worked multiple shifts.[17] Payments to individual Class Members shall be calculated and apportioned from the Net Settlement Amount based on the number of events the Class Member worked during the settlement Class Period and the number of times they worked two or more shifts in one day.  It is estimated that there are 1,015 Class Members and 9,198 workweeks covered by this settlement.[18] Therefore, Class Members can expect to receive approximately $22 per workweek after deductions. On a pure headcount basis, Promotional Specialists ("PSs") can expect to receive, on average, approximately $200 after deductions.[19]

**2.      Attorney's Fees, Costs and Enhancements**

Plaintiffs' counsel will be asking the Court to award 25% of the settlement fund or $125,000,[20] plus reimbursement of out-of-pocket litigation expenses not to exceed $55,000. Class counsel's costs and 50% of the fee award will be paid after final approval, while the remaining 50% of the fee award

---

[16] Wynne Decl., ¶25.
[17] Wynne Decl., ¶26.  However, the Net Amount will increase due to earned interest on the fund. Wynne Decl., ¶ 19.
[18] Wynne Decl., ¶20.
[19] Wynne Decl., ¶31.
[20] Wynne Decl., ¶28.  25% is the benchmark for an award of fees in common fund cases in the Ninth Circuit. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047-48 (2002).

will be paid after all settlement checks have been distributed or escheated to the California Secretary of State Unclaimed Property Division. In addition, Plaintiffs are asking for $500 representative service awards for Plaintiffs Arias, Cipolla and Wood.

### 3.    LWDA Payment

The Parties have agreed to pay the California Labor Workforces Development Agency ("LWDA") $75,000 (75 percent of a $100,000 PAGA penalty allocation) per Labor Code § 2699(i) to settle this claim and the Parties will submit this settlement to the LWDA per California Labor Code § 2699(l)(2). The remaining $25,000 goes to the 1,718 employees covered by the PAGA claims.[21]

### 4.    Settlement Administrator Fees

The Parties have agreed to use Phoenix Settlement Administrators as the Settlement Administrator. Phoenix has agreed to cap its fee at $15,995.[22]

## V.    THE STANDARDS FOR PRELIMINARY APPROVAL ARE SATISFIED

### A.    The Standard for Preliminary Approval

The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*.

As the Ninth Circuit has recognized, "the very essence of a settlement is compromise." *Officers for Justice,* 688 F.2d at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998). Even if the amount of a proposed monetary settlement is a fraction of the potential recovery

---

[21] Wynne Decl., ¶27.
[22] Wynne Decl., ¶29, Ex. 2.

that does not necessarily mean the settlement is inadequate. *Id.*

Court approval of a class action settlement is a two-step process. First, counsel submits the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation. If the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other obvious deficiencies, the court directs that notice be given to the class and sets a final fairness hearing. Herr, *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

Preliminary approval should be granted if the proposed settlement falls "within the range of possible final approval." *Gautreaux v. Pierce,* 690 F.2d at 616, 621 n.3 (7th Cir. 1982). Preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

A proposed settlement is presumed to be fair when: it is reached through arm's-length negotiations; the putative class is represented by experienced counsel; and the parties have conducted sufficient discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. The proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by an experienced mediator; the class is represented by experienced counsel; and the parties have conducted sufficient discovery, both formal and informal.[23] Thus, the settlement is presumed to be fair.

The Ninth Circuit has also suggested that district courts consider the following factors in evaluating the fairness of a class action settlement: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The relative degree of importance to be attached to any particular factor depends upon the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8

---

[23] Wynne Decl., ¶¶2-9, 13, 34, 37.  McCormack Decl. ISO Motion for Class Certification (Dkt. No. 166-3), ¶¶ 1-5.

F.3d 1370, 1376 (9th Cir. 1993). Here, the pertinent factors weigh in favor of granting preliminary approval.

**B.      Strength and Weaknesses of Plaintiffs' Case**

Defendants have at all times maintained that they have taken reasonable efforts to comply with the Labor Code, have paid PSs for all time worked and have provided meal and rest breaks according to California law. For instance, Defendants have maintained written policies, which inform all employees, including PSs, that they should report all hours worked, that they will be paid for all hours worked, and that they should take meal and rest breaks.

Defendants have filed a summary judgment motion arguing that PSs are not under the control of Defendants in between events because they are not required to work multiple shifts. Therefore, according to Defendants, PSs are not entitled to compensation for time spent traveling between events.  In addition, Defendants argue that PSs who work non-consecutive shifts are not entitled to meal breaks because eligibility for meal breaks is measured by work periods rather than cumulative time worked under the relevant Wage Orders.  Although Plaintiffs do not agree with Defendants' arguments, it would be risky for Plaintiffs to pursue these claims as it's not clear how a court would rule. If this Court or an Appellate Court accepted those arguments, Plaintiffs' class damages would be minimal to non-existent.

Plaintiffs' potential damages based on the claims listed in the Fourth Amended Complaint were significantly diminished once this Court denied certification of the broader wage issues and only certified the very narrow issues related to the time spent in between events and the entitlement to meal beaks when working multiple shifts.  For instance, the Court did not certify Plaintiffs' claims that PSs should be entitled to compensation for all hours worked, including set up time, clean up time, and time spent picking up kits.  In addition, the Court did not certify Plaintiffs' claim that PSs were not reimbursed for all reasonable business expenses, instead limiting this issue to only downloading the Brand Trend application, the value of which is *de minimis*.

Plaintiffs assert that PSs are entitled to travel time between events when the gap in time is 30 minutes or less because they remain under the control of Defendants; and that PSs are entitled to meal breaks when working multiple shifts with gaps of 30 minutes or less where they remain under the

control of Defendants for five or more consecutive hours. However, based on the limitations of the Court's certification order, counsel believes that the value of those claims is commensurate with the proposed settlement, particularly in light of the significant risks of pursing this case to summary judgment or jury trial.

### C.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re General Motors Corp.,* 55 F.3d 768, 806 (3rd Cir.1995) ("The present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

This factor supports preliminary approval here. Class counsel's experience in *Duran v. U.S. Bank LLC*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk, expense, complexity and duration of further litigation. Counsel herein was successful in obtaining certification for that case and subsequently prevailed at trial after eight years of litigation only to have the entire judgment and certification ultimately reversed by the California Supreme Court after an additional five years of litigation. The case was remanded back to the Superior Court where class certification was denied and plaintiffs' subsequent appeal was denied after a total of seventeen years.[24] Thus, even prevailing at the trial court is no guarantee of recovery especially against a large corporate defendant like Team Enterprises. In essence, the risk in continued litigation is extremely high. Thus, it is Counsels' informed opinion that benefits of this settlement outweigh the risk and that settlement at this juncture is in the best interests of the class.

### D.    The Amount Offered In Settlement

Defendants will pay $500,000, of which $100,000 will be designated as PAGA penalties and the remaining $400,000 is the gross allocation to the class. This results in average gross recovery of $394 for each of the 1,015 class members—or about $43.50 per workweek based on 9,198 total

---

[24] Wynne Decl., ¶4.

- 13 -

PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

workweeks. Given that the average class member worked approximately 1.5 days per week, this gross recovery is about $29 per workday—nearly one hour of work based on the $31.76 average pay rate.[25] Based on the allocation formula, which allocates a third of funds based on events worked and two-thirds of funds based solely on multiple shifts, those Class members working multiple shifts will receive approximately 90% of the settlement proceeds.[26]

Prior to mediation, Defendants produced meal break data for nearly all of the class. The data show the dates, scheduled start and end times, and location of events worked, as well as whether there was a "break offered" and a "break taken".[27]

For the first issue regarding breaks, the data show 380 class members worked two or more shifts within a single day of at least 4 hours total—i.e., enough to earn a rest break. This includes any travel time of less than or equal to half-an-hour between events, but excludes split shifts scheduled more than half-hour apart. Based on an average pay rate of $31.76 per hour, times 2,485 workdays in which a member worked at least four consecutive hours but did not take a break, the class is owed a maximum of $78,924 in rest break premiums. Based on 1,201 days in which a member worked over five hours without a break, the class is owed a maximum of $38,144 in meal break premiums. Interest on these amounts is $25,341 to date.

For the second issue regarding travel time in between events, the data show that 234 class members travelled between events with between 15-30 minutes gap in-between, on 976 occasions. Their damages for unpaid wages for this uncompensated time is at maximum $13,689. Interest to date on this amount is $3,596.

The bulk of Plaintiffs' damages are for derivative claims, which Defendants argue have not been certified. Wage statement penalties occurred in, at most, 2,070 periods, which result in $173,950 in penalties ($50 for the first inaccurate statement for each employee and $100 for each subsequent inaccurate statement, capped at a maximum of $4,000 per employee). Of the 391 class members who incurred some unpaid wages, 167 class members no longer work for Defendants, to the extent the data

---

[25] Wynne Decl., ¶30.
[26] Wynne Decl., ¶20.
[27] Wynne Decl., ¶30.

show they have not worked any event in the preceding year, meaning they are considered terminated under Defendants' policy. Based on average work of approximately 3.78 hours per day, times 30 days, times the average pay rate of $31.76 per hour, the maximum waiting time penalties incurred by the class are $600,941. A summary of the maximum potential damages of the Class is as follows: [28]

| CLAIM | AMOUNT |
|---|---|
| Rest Period Premiums | $78,924 |
| Meal Period Premiums | $38,144 |
| Interest on Premium Pay | $25,341 |
| Unpaid Wages | $13,689 |
| Interest on Unpaid Wages | $3,596 |
| Subtotal-Wage Claims | $159,694 |
|  |  |
| Wage Statement Penalties | $173,950 |
| Waiting Time Penalties | $600,941 |
| Subtotal-Derivative Claims | $774,891 |
|  |  |
| **TOTAL** | **$934,585** |

In total, the maximum potential liability for the Class is $934,585. However, the bulk of those damages (84%) are for waiting time penalties ($600,941) and wage statement penalties ($173,950), and Defendants dispute that Plaintiffs are entitled to such penalties as these claims were not specifically certified by the Court. Defendants further dispute that Plaintiffs can meet the elements of those claims. Regardless, the monetary settlement represents almost 45% recovery of Defendants' potential exposure even if the disputed derivative claims are included. Without such derivative claims, the maximum total liability is $159,694, which is far below the settlement.

Plaintiffs submit that this settlement is fair, reasonable and adequate and in the best interests of the Class.[29] Moreover, in Class Counsel's experience this settlement compares favorably to other recently- approved settlements of class actions alleging meal and rest period violations.[30]

Plaintiffs have designated $100,000 of the global settlement amount—i.e., 20% of the total—

---

[28] Wynne Decl., ¶30.
[29] Wynne Decl., ¶36.
[30] Wynne Decl., ¶32

to the PAGA claims.[31]  This PAGA payment is entirely consistent with amounts awarded by other courts both in terms of a relative amount and absolute amount.[32]  In *Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) this Court approved a $1,750,000 settlement with $5,000 allocated to the PAGA claim representing 0.2% of the total settlement amount. *Id*. at *1. Also, in *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015) this Court approved a $850,000 settlement with $10,000 allocated to the PAGA claims representing 1.1% of the total settlement amount. *Id*. at *1. Other courts in the Northern District have likewise approved similar allocations. For instance, in *Tsyn v. Wells Fargo Advisors, LLC*, No. 14-CV-02552-LB, 2018 WL 11424668 at *3 (N.D. Cal. Nov. 1, 2018), Judge Beeler approved a $20,000 allocation to the LWDA from a $9,500,000 gross settlement representing 0.2% of the total settlement. In *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal. Jan. 17, 2017), an FLSA case, Judge Orrick approved a payment of $30,000 to the LWDA from a $4,900,000 settlement representing 0.6% of the total settlement. In *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014), a wage and hour class action, Judge Orrick approved a $25,000 to the LWDA from a $865,000 settlement representing 2.8% of the total settlement.

Accordingly, the $100,000 allocation to the PAGA claim, representing 20% of the global settlement meets or exceeds the range of allocations courts have approved.

**E.    Extent of Discovery and Investigation Completed**

Plaintiffs conducted extensive formal and informal discovery. Plaintiffs propounded extensive written discovery, including three sets of interrogatories and eight sets of document requests resulting in the production of 6,898 documents, including thousands of spreadsheets.  Class Counsel took two Rule 30(b)(6) depositions.  The named Plaintiffs themselves answered 24 sets of written discovery, searched for and produced over 1,750 pages of evidence, and each sat for their deposition. Class Counsel also interviewed numerous individuals about their experiences working for Team; and Class Counsel obtained declarations from numerous witnesses. Based on the evidence and counsels'

---

[31]  Wynne Decl., ¶33.
[32]  Wynne Decl., ¶33.

experience, Class Counsel and Plaintiffs were able to make an informed decision that settlement was in the best interests of the Class.[33]

### F.    Experience and View of Counsel

Courts do not substitute their judgment for that of the proponents, particularly when settlement has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (DDC 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (NY 1979); *In re Armored Car Anti - Trust Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham Lincoln Federal Savings & Alcohol Association*, 79 F.R.D. 571 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and significant discovery has been completed. In this case, Plaintiffs and the Class are represented by competent and experienced counsel. Plaintiffs' counsel recommends the proposed settlement as fair, adequate and reasonable to the Class Members and in their best interests.[34]

## VI.    THE PROPOSED CLASS NOTICE IS THE BEST NOTICE PRACTICABLE

Under Fed. R. Civ. P. 23 (e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(c)(2)(B) provides: "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)." Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The Parties have agreed, subject to Court approval, to have the Settlement Administrator

---

[33] Wynne Decl., ¶34.
[34] Wynne Decl., ¶¶35-37.

- 17 -

PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

email notice to all class members and only mail via first class mail to Class Members to the extent that Team does not have a valid email address. Team has indicated that it has a high confidence level in the email addresses for the Class Members because that was the primary method of communication.[35] Emailing the notice provides for a substantial savings in the cost of administration.[36] This method meets the requirements of due process. *Overton v. Hat World, Inc.*, 2012 U.S. Dist. LEXIS 144116 at *5 (E.D. Cal. 2012) (in the context of mailed notice, noting that individual notice to class members' last known address meets the requirements of due process). The Settlement Administrator will establish a website and toll-free telephone number where Class Members can obtain information about the settlement. Accordingly, the proposed notice plan complies with Rule 23 and due process.[37]

## VII.    CONCLUSION

In light of the forgoing, Plaintiffs respectfully requests that the Court grant the motion for preliminary approval of the class action settlement.


Dated:  May 9, 2024                              MCCORMACK LAW FIRM


                                                 /s/ *Bryan J. McCormack*
                                                 Bryan J. McCormack

---

[35] Wynne Decl., ¶ 25.
[36] *Id.*
[37] *Id.*