EDWARD J. WYNNE, SBN 165819
*ewynne@wynnelawfirm.com*
GEORGE R. NEMIROFF, SBN 262058
*gnemiroff@wynnelawfirm.com*
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd, Suite 3G
Larkspur, CA 94939
Telephone:    415.461.6400
Facsimile:    415.461.3900

BRYAN J. MCCORMACK, SBN 192418
*bryan@mcelawfirm.com*
MCCORMACK LAW FIRM
1299 4th Street, Suite 505A
San Rafael, CA 94901
Telephone:    415.925.5161
Facsimile:    415.651.7837

Class Counsel

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA CIPOLLA, ALEXIS WOOD, BERNADETTE BLANCHARD, SHIRIN LESSAN, DENNIS FISHER, and JAMIE ARIAS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>TEAM ENTERPRISES, LLC; NEW TEAM LLC, doing business as TEAM ENTERPRISES,<br><br>    Defendants. | Case No. 3:18-cv-06867-WHA<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Date:      October 24, 2024<br>Time:     1:30 p.m.<br>Dept:     Courtroom 12, 19th Floor<br>Judge:   Hon. William H. Alsup |

1

**<u>NOTICE OF MOTION AND MOTION</u>**

2

TO THE COURT AND ALL INTERESTED PARTIES:

3

PLEASE TAKE NOTICE THAT on October 24, 2024 at 1:30 p.m. or as soon thereafter as

4

counsel may be heard, in the courtroom of the Hon. William H. Alsup, United States District Court

5

for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California,

6

in Courtroom 12, 19th Floor, plaintiffs will and hereby do respectfully move the Court for final

7

approval of the proposed class action settlement.

8

Plaintiffs respectfully request that the Court (1) grant final approval for the proposed class

9

action and PAGA settlement adjudging the terms of the settlement to be fair, reasonable and adequate,

10

and directing that its terms and provisions be carried out; (2) approve the payment of a service

11

enhancement to the named plaintiffs; and payment of class counsels' fees and costs (see Dkt. No.

12

223); and, (3) approve the settlement administrator's payment.

13

Plaintiffs make this motion on the grounds that the proposed settlement is within the range of

14

reasonableness for final approval. This Motion is based upon this Notice of Motion and Motion for

15

Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support

16

Thereof, the Declaration of Edward J. Wynne, the Declaration of Settlement Administrator Mayra

17

Gonzalez, any oral argument of counsel, the complete files and records in the above-captioned matter,

18

and such additional matters as the Court may consider.  This motion is unopposed.

19

20

Dated:  September 19, 2024                                    MCCORMACK LAW FIRM

21

/s/ Bryan J. McCormack
Bryan J. McCormack

22

Class Counsel

23

24

25

26

27

28

i

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

1

2

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF THE CASE ............................................................................1

        A.      Procedural Statement ............................................................................1

        B.      Settlement Administration ....................................................................4

III.    FINAL SETTLEMENT APPROVAL IS APPROPRIATE ................................5

        A.      Standard for Final Approval .................................................................5

        B.      The *Churchill* Factors .........................................................................6

                1. Strength and Weaknesses of Plaintiffs' Case ...............................6

                2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...........7

                3. The Amount Offered in Settlement .............................................8

                4. Extent of Discovery and Investigation Completed .....................12

                5. Experience and View of Counsel...............................................12

                6. Reaction of Class Members ......................................................13

        C.      The Rule 23(e) (2) Factors...................................................................13

        D.      This Court's Factors ............................................................................13

IV.     CONCLUSION ..................................................................................................14

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alvarez v. Farmers Ins. Exch.*,
No. 3:14-CV-00574-WHO, 2017 WL 2672710 (N.D. Cal. Jan. 17, 2017)....................................10

4

*Amaral v. Cintas Corp. No. 2*
(2008) 163 Cal. App. 4th 1157 ...................................................................................................11

5

6

*Ayala v. Coach, Inc.*,
No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) ........................................10

7

*Blandino v. MCM Constr., Inc.*,
No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ........................................10

8

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal.1979)..................................................................................................7

9

10

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .....................................................................................................13

11

*Churchill Vill., LLC v. Gen. Elec*,
361 F.3d 566 (9th Cir. 2004) .............................................................................................6, 13, 14

12

13

*Cotter v. Lyft, Inc.*
(N.D. Cal. 2016) 193 F.Supp.3d 1030, 1037 ...............................................................................11

14

*Hammon v. Barry*,
752 F. Supp. 1087 (DDC 1990)....................................................................................................12

15

16

*In re Armored Car Anti - Trust Litigation*,
472 F. Supp. 1357 (N.D. Ga. 1979)..............................................................................................12

17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..........................................................................................................6

18

*In re General Motors Corp.*,
55 F.3d 768 (3rd Cir.1995)..............................................................................................................7

19

20

*Morris v. Fid. Invs.*,
No. C 17-06027 WHA, 2019 WL 4040069 (N.D. Cal. Aug. 26, 2019)......................................13

21

*O'Connor v. Uber Techs., Inc.*
(N.D. Cal. 2016) 201 F.Supp.3d 1110 .........................................................................................11

22

23

*Officers for Just. v. Civ. Serv. Comm'n of S.F.*,
688 F.2d 615 (9th Cir. 1982) ..........................................................................................................6

24

*Sarkisov v. StoneMor Partners L.P.*,
No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015) .......................................10

25

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
79 F.R.D. 571 (E.D. Pa. 1978) .....................................................................................................12

26

*Steinberg v. Carey*,
470 F. Supp. 471 (NY 1979) .........................................................................................................12

27

28

*Stickles v. Atria Senior Living, Inc.*,
No. C 20-09220 WHA, 2023 WL 6725529 (N.D. Cal. Oct. 11, 2023)........................................13

*Swamy v. Title Source Inc.*,
   No. C 17-01175 WHA, 2018 WL 5306633 (N.D. Cal. Sept. 5, 2018) ..........................................13

*Tsyn v. Wells Fargo Advisors, LLC*,
   No. 14-CV-02552-LB, 2018 WL 11424668 (N.D. Cal. Nov. 1, 2018)..........................................10


**Statutes**

Cal. Code Regs. tit. 8 § 13520 ..........................................................................................................11

Cal. Labor Code § 1197.1 ..................................................................................................................11

Cal. Labor Code § 203 ........................................................................................................................11

Cal. Labor Code § 226 ........................................................................................................................11

Cal. Labor Code § 2699 ........................................................................................................................1

Cal. Labor Code § 2699(e) ................................................................................................................11

Federal Rules of Civil Procedure
   23(e)..........................................................................................................................................6, 13, 14

1

## I.    INTRODUCTION

Plaintiffs Jamie Arias, Felicia Cipolla and Alexis Wood ("Plaintiffs") seek final approval of a $500,000 non-reversionary class action and PAGA settlement between Plaintiffs and Defendants Team Enterprises, LLC and New Team, LLC ("Defendants" or "Team") to settle the meal and rest break reimbursement, business expenses, and related claims on behalf of the certified class of Promotional Specialists.

The parties have achieved a superior result in regard to the certified issues, as embodied in the Joint Stipulation of Settlement and Release ("Stipulation of Settlement"). The proposed settlement provides substantial benefits to the class comprised of current and former Promotional Specialists employed by Defendants in California at any time in California from February 15, 2019 to August 3, 2023 and who signed an arbitration agreement with Team on or after February 15, 2019 (collectively, "Class Members" and the "Class Period").  In addition, the settlement suitably resolves the PAGA claims of Promotional Specialists who worked for Defendants between August 23, 2017 and the preliminary approval date of June 13, 2024.  The settlement is the product of the determined efforts by Class Counsel to obtain the best possible result for the Class Members.

Notice was given to the class on June 21, 2024. Notably, <u>not a single objection has been received and not one class member opted-out</u>. These facts attest to the fairness, reasonableness, and adequacy of the settlement. The settlement of this action is fair, reasonable and adequate and in the best interests of the class. Accordingly, final approval should be granted.

## II.    STATEMENT OF THE CASE

### A.    Procedural Statement

On August 23 2018, Plaintiffs Cipolla and Wood filed and served the Labor and Workforce Development Agency ("LWDA") with written notice of their intent to file a lawsuit pursuant to Labor Code § 2699, *et seq*. On the same date, they served Defendants with written notices via certified mail of their intent to file a lawsuit pursuant to Labor Code § 2699, *et seq.*[1]

On November 13, 2018, Plaintiffs Cipolla and Wood filed their Rule 23 class action complaint

---

[1]  Wynne Decl., ¶ 10.

1    (the "Complaint") against Defendants in United States District Court for the Northern District of

2    California. (Dkt. No. 1.)

3        On May 15, 2019, Defendants filed their Notice of Motion and Motion to Compel Plaintiffs

4    Complaint to Arbitration and Stay Judicial Proceedings (the "Motion to Compel Arbitration"). (Dkt.

5    No. 17.)

6        On April 7, 2019, this Court issued its order denying the Motion to Compel Arbitration. (Dkt.

7    No. 25.) The Court ruled that the arbitration agreement was permeated with unconscionability and

8    refused to enforce the agreement. (Dkt. No. 25.)

9        On May 3, 2019, Defendants filed their Notice of Appeal of the Court's order denying the

10   Motion to Compel Arbitration. (Dkt. No. 31.)

11       On June 24, 2020, the Ninth Circuit, in a split decision, issued its opinion reversing this Court's

12   denial of the Motion to Compel Arbitration and remanding it for consideration of the delegation clause.

13   (Dkt. No. 48.) In particular, the panel found that Defendants, despite having requested and received a

14   ruling on the merits, did not waive the issue of the delegation clause and remanded it to the District

15   Court for further consideration.

16       On November 5, 2020, the Court issued its Order Compelling Arbitration, Staying Case and

17   Setting Status Conference. (Dkt. No. 51.)

18       On November 17, 2020, Cipolla and Wood filed arbitration demands with JAMS, and

19   commenced employment arbitration against Team Enterprises.

20       On July 29, 2021, Plaintiffs Wood and Cipolla moved this Court for an order lifting the stay

21   and allowing two additional individuals, Bernadette Blanchard and Shirin Lessan, to be added as

22   putative named plaintiffs to the class action allegations. (Dkt. No. 56.)  The motion was granted a few

23   months later.

24       On September 13, 2021, the arbitrator in Wood ruled that the arbitration agreement was

25   unenforceable as it was permeated with unconscionable provisions.[2]

26       On Nov 26, 2021, Plaintiffs filed a motion for leave to file a Second Amended Complaint to

27

28   ---

[2] Wynne Decl., ¶ 11.

1   address issues raised by Defendants in various motions.  The Court granted such leave. (Dkt No. 80.)

2   Plaintiffs brought a Motion for Class Certification that was heard on October 19, 2022. (Dkt.

3   No. 95.) The Court denied the motion without prejudice, directing Plaintiffs to address estoppel issues

4   and to file a separate motion regarding a subclass of Promotional Specialists who signed the 2019

5   Arbitration Agreement. (Dkt. No. 123.)

6   Following the October 19th hearing and consistent with the Court's instruction regarding

7   adding a class representative who signed the 2019 arbitration agreement for a new class certification

8   motion, Plaintiff filed a Third Amended Complaint on December 12, 2022 to add Dennis Fisher as a

9   party; to add a subclass comprised of Promotional Specialists who signed an arbitration agreement on

10  or after February 15, 2019; and to make other miscellaneous changes, which was granted on December

11  15, 2022. (Dkt. Nos. 132 and 134.)  The Third Amended Complaint was filed that same day.  (Dkt.

12  No. 135.)

13  On December 13, 2022, Plaintiffs filed a Renewed Motion for Class Certification addressing

14  the estoppel issue and Defendants' potential affirmative defenses. (Dkt. No. 133.)

15  On January 9, 2023, Plaintiffs filed a Motion for Class Certification of the 2019 Arbitration

16  Class.  On March 26, 2023, the Court denied this motion finding that Dennis Fisher was not an

17  adequate class representative.  The Court also denied the Motion for Class Certification addressing

18  the estoppel issue.  In its Order, the Court allowed Plaintiffs to file a Fourth Amended Complaint with

19  Jamie Arias as a class representative.  (Dkt. No. 162.)

20  On April 13, 2023, Plaintiffs filed a Fourth Amended Complaint, which includes various wage

21  and hour causes of action including failure to pay for all time worked in violation of the California

22  Labor Code and failure to provide legally-compliant meal and rest breaks. (Dkt. No. 164.)

23  On July 3, 2023, after considering Plaintiffs' fourth motion for class certification, the Court

24  certified several issues for Rule 23 class treatment, including the following: (1) when a promotional

25  specialist chooses to work two or more shifts in a single day, does the company policy denying a meal

26  or rest break violate the California labor laws?; and (2) in short-duration scenarios, should the time in-

27  between events in a single day be deemed "on-the-clock"? (Dkt. No. 185 at 6-7.)  The third certified

28  issue regarding whether the class members are entitled to reimbursement for downloading the Brand

1    Trend application has been abandoned by Plaintiffs due to the *de minimis* value of this claim.[3]

2    On October 9, 2023, with this Court's permission, the parties mediated this case with

3    experienced mediator Mark Peters of Duckworth and Peters.  The case did not settle at the initial

4    mediation.  However, the parties continued discussions and scheduled a second mediation for

5    December 18, 2023.  With the help of the mediator, the parties settled the case a few days after the

6    mediation.[4]

7    On January 19, 2024, Plaintiffs filed their initial Motion for Preliminary Approval of Class

8    Action and PAGA settlement.  Defendants did not oppose this motion.  On April 25, 2024, the Court

9    denied Plaintiff's motion for preliminary approval. (Dkt. No. 225.)  On May 9, 2024, Plaintiffs filed

10    their Amended Motion for Preliminary Approval addressing issues raised by the Court at the previous

11    hearing.  Preliminary approval was granted on June 13, 2024.  (Dkt No. 230.)

12    On July 10, 2024, Plaintiffs filed their Motion for Attorney Fees and Costs which is set to be

13    heard concurrently with this motion. (Dkt. No. 223.)

14    **B.    Settlement Administration**

15    Pursuant to the Court's Order Granting Preliminary Approval, the Court appointed Phoenix

16    Settlement Administrators the Settlement Administrator.[5]

17    On June 18, 2024, Defendant provided the Settlement Administrator with the class data

18    including class member contact information and employment information.[6]

19    On June 21, 2024, Notices were emailed to all 1,016 class members on the Class List.  The

20    Notice Packet advised the Class Members that their postmark deadline to submit a Request for

21    Exclusion or Opt-Out or a written objection to the Settlement was August 20, 2024.[7]

22    As of this date, none of the Notice Packets remain undeliverable.[8]

23    The Settlement Administrator received no objections to the settlement and no requests for

24

25

---

[3]  Wynne Decl., ¶ 12.
26  [4]  Wynne Decl., ¶ 13.
[5]  Gonzalez Decl., ¶ 1.
27  [6]  Gonzalez Decl., ¶ 4.
[7]  Gonzalez Decl., ¶ 5.
28  [8]  Gonzalez Decl., ¶¶ 6-9.

- 4 -

1

exclusion.[9]

2

The Net Settlement Amount available to Settlement Class Members is estimated to be

3

$202,775.00 and was calculated by subtracting the requested attorneys' fees ($125,000.00); the

4

amount allocated for litigation costs and expenses ($54,730.00); the requested Enhancement Payments

5

($1,500.00); the payment to the LWDA ($75,000.00); the payment to employees covered by PAGA

6

claims ($25,000); and the requested Settlement Administration Costs ($15,995.00), from the Gross

7

Settlement Amount ($500,000.00).

8

All Class Members shall receive mailed checks. Any checks that are uncashed shall be

9

deposited with the State in the class member's name as unclaimed wages. Any amounts of the Net

10

Fund not negotiated by Plaintiff or Settlement Class Members shall be sent to the California

11

Controller's Unclaimed Property Division in the name of the Arias Class Member and/or Cipolla

12

PAGA Member in accordance with California law, 120 days after checks are mailed to Plaintiffs and

13

Settlement Class Members.

14

The *highest* Individual Settlement Share to a Settlement Class Member is currently estimated

15

to be approximately $5,029.11, the *average* Individual Settlement Share is currently estimated to be

16

approximately $266.45.  These amounts are subject to employee-side tax and withholdings.[10]

17

As of this date, the estimated Employer Taxes that will be paid by Defendant in addition to the

18

Gross Settlement Amount is $10,057.41.[11]  Phoenix's total costs for services in connection with the

19

administration of this Settlement, including fees incurred and anticipated future costs for completion

20

of the administration, are $15,995.[12]

21

### III.   FINAL SETTLEMENT APPROVAL IS APPROPRIATE

22

**A.   Standard for Final Approval**

23

"The class action device, while capable of the fair and efficient adjudication of a large number

24

of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for*

25

26

---

27

[9]  Gonzalez Decl., ¶ 11.
[10]  Gonzales Decl., ¶ 12.

28

[11]  Gonzalez Decl., ¶ 13.
[12]  Gonzalez Decl., ¶ 13.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

1    *Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982). A district court may grant

2    approval of a settlement that will bind class members only after a hearing and only upon a finding

3    that it is fair, reasonable, and adequate. FRCP 23(e).

4          The Rule 23(e)(2) analysis is guided by the eight *Churchill* factors: (1) the strength of

5    plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk

6    of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

7    extent of discovery completed and the stage of the proceedings; (6) the experience and views of

8    counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of

9    the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir.

10   2011) citing *Churchill Vill., LLC v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004).

11         Rule 23(e)(2) itself requires a district court to take up an additional set of factors. FRCP

12   23(e)(2)(A)–(D). To find that a settlement is fair, reasonable, and adequate, a district court must assess

13   whether: (A) the class representatives and class counsel have adequately represented the class; (B)

14   the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D)

15   the proposal treats class members equitably relative to each other. Other relevant factors that will be

16   considered are those listed in the Court's notice of factors to be evaluated for any proposed class

17   settlement. (Dkt. No. 14.)

18   **B.      The *Churchill* Factors**

19         **1.      Strength and Weaknesses of Plaintiffs' Case**

20         Defendants have at all times maintained that they have taken reasonable efforts to comply

21   with the Labor Code, have paid Promotional Specialists ("PSs") for all time worked and have

22   provided meal and rest breaks according to California law. For instance, Defendants have maintained

23   written policies, which inform all employees, including PSs, that they should report all hours worked,

24   that they will be paid for all hours worked, and that they should take meal and rest breaks.

25         Defendants have filed a summary judgment motion arguing that PSs are not under the control

26   of Defendants in between events because they are not required to work multiple shifts. Therefore,

27   according to Defendants, PSs are not entitled to compensation for time spent traveling between

28   events.  In addition, Defendants argue that PSs who work non-consecutive shifts are not entitled to

1    meal breaks because eligibility for meal breaks is measured by work periods rather than cumulative

2    time worked under the relevant Wage Orders.  Although Plaintiffs do not agree with Defendants'

3    arguments, it would be risky for Plaintiffs to pursue these claims as it's not clear how a court would

4    rule. If this Court or an Appellate Court accepted those arguments, Plaintiffs' class damages would

5    be minimal to non-existent.

6         Plaintiffs' potential damages based on the claims listed in the Fourth Amended Complaint

7    were significantly diminished once this Court denied certification of the broader wage issues and only

8    certified the very narrow issues related to the time spent in between events and the entitlement to

9    meal beaks when working multiple shifts.  For instance, the Court did not certify Plaintiffs' claims

10   that PSs should be entitled to compensation for all hours worked, including set up time, clean up time,

11   and time spent picking up kits.  In addition, the Court did not certify Plaintiffs' claim that PSs were

12   not reimbursed for all reasonable business expenses, instead limiting this issue to only downloading

13   the Brand Trend application, the value of which is *de minimis*.

14        Plaintiffs assert that PSs are entitled to travel time between events when the gap in time is 30

15   minutes or less because they remain under the control of Defendants; and that PSs are entitled to meal

16   breaks when working multiple shifts with gaps of 30 minutes or less where they remain under the

17   control of Defendants for five or more consecutive hours.  However, based on the limitations of the

18   Court's certification order, counsel believes that the value of those claims is commensurate with the

19   proposed settlement, particularly in light of the significant risks of pursing this case to summary

20   judgment or jury trial.

21        **2.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

22        To assess the fairness, adequacy and reasonableness of a class action settlement, the Court

23   must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent

24   in continued litigation. *In re General Motors Corp.,* 55 F.3d 768, 806 (3rd Cir.1995) ("The present

25   value of the damages plaintiffs would likely recover if successful, appropriately discounted for the

26   risk of not prevailing, should be compared with the amount of the proposed settlement."); *Boyd v.*

27   *Bechtel Corp.,* 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

28        This factor supports final approval here. Class counsel's experience in *Duran v. U.S. Bank*

*LLC*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk, expense, complexity and duration of further litigation. Counsel herein was successful in obtaining certification for that case and subsequently prevailed at trial after eight years of litigation only to have the entire judgment and certification ultimately reversed by the California Supreme Court after an additional five years of litigation. The case was remanded back to the Superior Court where class certification was denied and plaintiffs' subsequent appeal was denied after a total of seventeen years.[13] Thus, even prevailing at the trial court is no guarantee of recovery especially against a large corporate defendant like Team Enterprises. In essence, the risk in continued litigation is extremely high. Thus, it is Counsels' informed opinion that benefits of this settlement outweigh the risk and that settlement at this juncture is in the best interests of the class.

### 3.    The Amount Offered in Settlement

Prior to mediation, Defendants produced meal break data for nearly all of the class. The data show the dates, scheduled start and end times, and location of events worked, as well as whether there was a "break offered" and a "break taken."[14]

For the first issue regarding breaks, the data show 380 class members worked two or more shifts within a single day of at least 4 hours total—i.e., enough to earn a rest break.  This includes any travel time of less than or equal to half-an-hour between events, but excludes split shifts scheduled more than half-hour apart.  Based on an average pay rate of $31.76 per hour, times 2,485 workdays in which a member worked at least four consecutive hours but did not take a break, the class is owed a maximum of $78,924 in rest break premiums.  Based on 1,201 days in which a member worked over five hours without a break, the class is owed a maximum of $38,144 in meal break premiums.  Interest on these amounts is $25,341 as of the date of filing for preliminary approval.[15]

For the second issue regarding travel time in between events, the data show that 234 class members travelled between events with between 15-30 minutes gap in-between, on 976 occasions. Their damages for unpaid wages for this uncompensated time is at maximum $13,689. Interest to date

---

[13] Wynne Decl., ¶ 4.
[14] Wynne Decl., ¶ 18.
[15] Wynne Decl., ¶ 18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

1   on this amount is $3,596.[16]

2      The bulk of Plaintiffs' damages are for derivative claims, which Defendants argue have not

3   been certified.  Wage statement penalties occurred in, at most, 2,070 periods, which result in $173,950

4   in penalties ($50 for the first inaccurate statement for each employee and $100 for each subsequent

5   inaccurate statement, capped at a maximum of $4,000 per employee).  Of the 391 class members who

6   incurred some unpaid wages, 167 class members no longer work for Defendants, to the extent the data

7   show they have not worked any event in the preceding year, meaning they are considered terminated

8   under Defendants' policy.  Based on average work of approximately 3.78 hours per day, times 30

9   days, times the average pay rate of $31.76 per hour, the maximum waiting time penalties incurred by

10  the class are $600,941. A summary of the maximum potential damages of the Class is as follows: [17]

11

12
| CLAIM | AMOUNT |
| --- | --- |
| Rest Period Premiums | $ 78,924 |
| Meal Period Premiums | $ 38,144 |
| Interest on Premium Pay | $ 25,341 |
| Unpaid Wages | $ 13,689 |
| Interest on Unpaid Wages | $  3,596 |
| Subtotal-Wage Claims | $159,694 |
|  |  |
| Wage Statement Penalties | $173,950 |
| Waiting Time Penalties | $600,941 |
| Subtotal-Derivative Claims | $774,891 |
|  |  |
| **TOTAL** | **$934,585** |

20      In total, the maximum potential liability for the Class is $934,585.  However, the bulk of those

21  damages (84%) are for waiting time penalties ($600,941) and wage statement penalties ($173,950),

22  and Defendants dispute that Plaintiffs are entitled to such penalties as these claims were not

23  specifically certified by the Court. Defendants further dispute that Plaintiffs can meet the elements of

24  those claims.  Regardless, the monetary settlement represents almost 45% recovery of Defendants'

25  potential exposure even if the disputed derivative claims are included. Without such derivative claims,

26

27

28  [16] Wynne Decl., ¶ 18.
    [17] Wynne Decl., ¶ 18.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

the maximum total liability is $159,694, which is far below the settlement.

Plaintiffs submit that this settlement is fair, reasonable and adequate and in the best interests of the Class.[18] Moreover, in Class Counsel's experience this settlement compares favorably to other recently-approved settlements of class actions alleging meal and rest period violations.[19]

Plaintiffs have designated $100,000 of the global settlement amount—i.e., 20% of the total— to the PAGA claims.[20] This PAGA payment is entirely consistent, and certainly exceeds, amounts awarded by other courts both in terms of a relative amount and absolute amount.[21] In *Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) this Court approved a $1,750,000 settlement with $5,000 allocated to the PAGA claim representing 0.2% of the total settlement amount. *Id*. at *1. Also, in *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015) this Court approved a $850,000 settlement with $10,000 allocated to the PAGA claims representing 1.1% of the total settlement amount. *Id*. at *1. Other courts in the Northern District have likewise approved similar allocations. For instance, in *Tsyn v. Wells Fargo Advisors, LLC*, No. 14-CV-02552-LB, 2018 WL 11424668 at *3 (N.D. Cal. Nov. 1, 2018), Judge Beeler approved a $20,000 allocation to the LWDA from a $9,500,000 gross settlement representing 0.2% of the total settlement. In *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal. Jan. 17, 2017), an FLSA case, Judge Orrick approved a payment of $30,000 to the LWDA from a $4,900,000 settlement representing 0.6% of the total settlement. In *Blandino v. MCM Constr., Inc.,* No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014), a wage and hour class action, Judge Orrick approved a $25,000 to the LWDA from a $865,000 settlement representing 2.8% of the total settlement.  Accordingly, the $100,000 allocation to the PAGA claim, representing 20% of the global settlement meets or exceeds the range of allocations courts have approved.  Here, the PAGA claims vastly exceed the scope of the certified class claims, warranting the relatively high share of the total settlement.

In Counsels' experience, claims for penalties, both waiting time penalties and PAGA penalties

---

[18] Wynne Decl., ¶ 24.
[19] Wynne Decl., ¶ 24.
[20] Wynne Decl., ¶ 20.
[21] Wynne Decl., ¶ 20.

1    (when plead in conjunction with class claims) are given less consideration and value in settlement than

2    the wage claims.[22]  Part of the reason for this is the standard that must be shown. For instance, waiting

3    time penalties under Labor Code § 203 require a finding of willfulness.  (Cal. Labor Code § 203(a).)

4    A good faith dispute will preclude a finding of willfulness. (Cal. Code Regs. tit. 8 § 13520; *Amaral v.*

5    *Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1203.) Clearly, there is a good faith dispute here.

6    Similarly, Labor Code Sections 226 and 1197.1 require plaintiffs to make a showing that a defendant's

7    conduct was "knowing and intentional" and "intentional," respectively. (Cal. Labor Code §§ 226(e)(1)

8    and 1197.1(a)(1).) Likewise, PAGA also vests the Superior Court with discretionary authority to limit

9    PAGA's reach and effect. (Cal. Labor Code § 2699(e)(2).) Under PAGA, courts are empowered to

10   substantially reduce any award of civil penalties based on discretionary factors. More specifically,

11   Labor Code § 2699(e)(2) states that "a court may award a lesser amount than the maximum civil penalty

12   amount specified by this part if, based on the facts and circumstances of the particular case, to do

13   otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." (*See*

14   *O'Connor v. Uber Techs., Inc.* (N.D. Cal. 2016) 201 F.Supp.3d 1110, 1133  [noting that even if PAGA

15   penalties amounted to $1 billion, such award "could well be reduced, as a court may reduce the penalty

16   when to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory"];

17   *Cotter v. Lyft, Inc.* (N.D. Cal. 2016) 193 F.Supp.3d 1030, 1037 [finding $1 million PAGA allocation

18   reasonable and noting that a "significant reduction" of PAGA penalties would be appropriate].)   As

19   such, the amount realized is appropriate in light of the significant risk factors.

20          The essential terms of the monetary settlement between Plaintiffs and Defendants provides for

21   a settlement payment to each class member that is reasonably tailored to each class member's claim,

22   with the strongest claims receiving the bulk of funds.  The allocation is based on: (1) the number of

23   workdays class members worked two or more shifts; (2) the total number of events they worked during

24   the settlement period of February 15, 2019 through the Preliminary Approval Date.  Under this

25   allocation, approximately 90% of the settlement funds will be paid to class members with the strongest

26   claims (i.e., those who worked the most multiple shifts according to Defendants' scheduling data).

27

28
_____
[22] Wynne Decl., ¶ 19.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT
CIPOLLA V. TEAM ENTERPRISES, LLC ET AL., CASE NO. 18-CV-06867-WHA

1    Thus, while the monetary settlement provides for class-wide relief and is based on time worked, it is

2    also designed to take into consideration each class member's individual situation and the strength of

3    each member's claim, so as to maximize the equity of the distribution without overwhelming the

4    administration of the settlement.

5    **4.    Extent of Discovery and Investigation Completed**

6    Plaintiffs conducted extensive formal and informal discovery. Plaintiffs propounded

7    extensive written discovery, including three sets of interrogatories and eight sets of document requests

8    resulting in the production of 6,898 documents, including thousands of spreadsheets.  Class Counsel

9    took two Rule 30(b)(6) depositions.  The named Plaintiffs themselves answered 24 sets of written

10   discovery, searched for and produced over 1,750 pages of evidence, and each sat for their deposition.

11   Class Counsel also interviewed numerous individuals about their experiences working for Team; and

12   Class Counsel obtained declarations from numerous witnesses. Based on the evidence and counsels'

13   experience, Class Counsel and Plaintiffs were able to make an informed decision that settlement was

14   in the best interests of the Class.[23]

15   **5.    Experience and View of Counsel**

16   Courts do not substitute their judgment for that of the proponents, particularly when settlement

17   has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp.

18   1087 (DDC 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (NY 1979); *In re Armored Car Anti - Trust*

19   *Litigation*, 472 F. Supp. 1357 (N.D. Ga. 1979); *Sommers v. Abraham Lincoln Federal Savings &*

20   *Alcohol Association*, 79 F.R.D. 571 (E.D. Pa. 1978).

21   While the recommendations of counsel proposing the settlement are not conclusive, the court

22   can properly take them into account, particularly if they have been involved in litigation for some

23   period of time, appear to be competent, have experience with this type of litigation, and significant

24   discovery has been completed. In this case, Plaintiffs and the Class are represented by competent and

25   experienced counsel. Plaintiffs' counsel recommends the proposed settlement as fair, adequate and

26   reasonable to the Class Members and in their best interests.[24]

27

28   [23] Wynne Decl., ¶ 22.
     [24] Wynne Decl., ¶¶ 24.

1

### 6.     Reaction of Class Members

2   The reaction of the class has been overwhelming in support. Notice was sent to over 1,000

3   class members and not a single class member objected or opted-out. This Court has granted final

4   approval to other employment class action under similar facts.  See, e.g., *Swamy v. Title Source Inc.*,

5   No. C 17-01175 WHA, 2018 WL 5306633, at *2 (N.D. Cal. Sept. 5, 2018) [final approval granted

6   where five class members requested exclusion from the settlement and none objected]; *Stickles v.*

7   *Atria Senior Living, Inc.*, No. C 20-09220 WHA, 2023 WL 6725529, at *1 (N.D. Cal. Oct. 11,

8   2023)[granting final approval where no opt-outs, objections, or calculation disputes have been

9   received]; *Morris v. Fid. Invs.*, No. C 17-06027 WHA, 2019 WL 4040069, at *1 (N.D. Cal. Aug. 26,

10  2019) [granting final approval where only three members opted out and no class members have

11  objected to the settlement].

12  **C.     The Rule 23(e) (2) Factors**

13  Rule 23(e)(2), as amended in 2018, requires the district court to go beyond the *Churchill*

14  factors. *See Briseňo v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). As set forth above, in order

15  to find that a settlement is fair, reasonable, and adequate, a district court must consider whether (A)

16  the class representatives and class counsel have adequately represented the class; (B) the proposal

17  was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal

18  treats class members equitably relative to each other. Review of these factors support final approval.

19  *First*, Class Counsel and the class representatives have represented the class adequately. As

20  noted above, the relief is well-within the range of what Plaintiffs could have achieved had they been

21  successful at trial *Second*, the settlement agreement is the product of arms-length negotiations

22  conducted through mediator Mark Peters. *Third*, the relief is adequate as the recovery is well-within

23  reason, no claim form was required for class members to recover, and the attorney's fees are

24  reasonable as set forth in the accompanying motion for fees (Dkt. No. 223). *Fourth*, the settlement

25  treats class members equitably relative to each other because it is based on the number of double-

26  shifts that they worked which is the claim that was certified by this Court.

27  **D.     This Court's Factors**

28  The Court issued an order which identifies factors it will consider when evaluating a class

1    action settlement. (Dkt. No. 14.) Some of those factors are duplicative of what the Court must evaluate

2    in terms of the *Churchill* factors and the Rule 23(e) factors. These factors also support final approval.

3         First, the Plaintiffs are adequate. They do not have any conflicts of interest, they are do not

4    have criminal convictions, a prior history of litigation or a prior history with counsel. Second, the

5    cost benefit analysis favors approval. Substantial discovery has been conducted and the recovery of

6    the class is approximately half of what they could expect had they been successful at trial. Third, per

7    the Court's direction, the Parties have narrowed the release to what was certified by the Court. Fourth,

8    the class has not been expanded, there a reversion, and there is no claim procedure. Sixth, there is no

9    indication that Defendants are headed to bankruptcy. Seventh, the Parties did not discuss settlement

10   until after the Court granted class certification. Eighth, the class representative enhancement awards

11   are very modest. Last, the notice was provided in plain English.

### IV.    CONCLUSION

13        The Stipulation for Settlement provides substantial benefits to the class members that are fair,

14   reasonable and adequate. The standards for final approval have been met. Accordingly, Class Counsel

15   respectfully requests that the Court grant final approval of the Settlement.

17   Dated:  September 19, 2024                    MCCORMACK LAW FIRM

19                                                 /s/ *Bryan J. McCormack*
                                                   Bryan J. McCormack