1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10

11    FELICIA CIPOLLA, et al.,                No.  C 18-06867 WHA

12            Plaintiffs,

13       v.                                   **ORDER GRANTING PLAINTIFF'S
                                              MOTION FOR FINAL APPROVAL
14    TEAM ENTERPRISES, LLC, et al.,          OF SETTLEMENT AND GRANTING
                                              COUNSEL'S MOTION FOR
15            Defendants.                     ATTORNEY'S FEES, COSTS, AND
                                              SERVICE AWARDS**

16

17   _____

18                                **INTRODUCTION**

19          In this certified wage-and-hour class action involving part time models working for

20   defendant marketing firms, plaintiffs move for approval of a class settlement.  Because the

21   settlement is fair, reasonable, and adequate, final approval is **GRANTED**.

22          Plaintiffs' counsel separately moves for an award of attorney's fees in the amount of one-

23   quarter of the gross common fund, costs in the amount of $54,730, and class representative

24   service awards in the amount of $500 for each of three named plaintiffs (for $1,500 total).  The

25   motion for attorney's fees, costs, and class representative service awards is **GRANTED**.

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**STATEMENT**

Previous orders recite the facts of this litigation in full (Dkt. Nos. 25).  This class action was first filed in November of 2018 (Dkt. No. 1).  Plaintiff Jamie Arias is a California resident who worked as a Promotional Specialist for defendants from 2019 to 2023 (Dkt. No. 164 at 1).  Plaintiffs Felicia Cipolla and Alexis Wood, representative members of the PAGA class, both worked as Promotional Specialists within this judicial district from 2013 to 2019 (*ibid.*).  "Promotional specialists" are part-time models who go to various venues, set up tables, and advertise products during social events.  The products — usually beers and spirits — are provided by third-party clients who have contracted with defendant-employers, two Florida-based marketing companies.

Plaintiffs' first complaint brought both Fair Labor Standards Act and California Labor Code claims alleging that they and other non-exempt employees were denied overtime compensation and other wages, were not provided meal and rest breaks, were not provided lawful wage statements, were not reimbursed for all necessary business expenses, and were not promptly paid their final wages at time of termination (Dkt. No. 1 at 2).

The path from plaintiffs' first complaint to this settlement has been long and winding.

Defendants promptly filed a motion to compel arbitration and stay these proceedings in February 2019 (Dkt. No. 17).  An order held the arbitration agreement unconscionable and denied the motion (Dkt. No. 25).  Defendants appealed, and in a split decision, our court of appeals reversed, holding that the contract's delegation clause required the issue of validity and enforceability to go to the arbitrator (Dkt. No. 50 at 1-2).  The undersigned issued an order compelling arbitration and staying the case shortly thereafter (Dkt. No. 51).  After nearly a year with JAMS, the arbitrator, too, deemed the arbitration agreement unconscionable and unenforceable.

That is how the parties found themselves back before the undersigned in November of 2021, three years after the complaint was filed, having made very little progress.  A series of false starts followed.  Plaintiffs brought a first, second, and third motion for class certification, all of which were denied (Dkt. No. 123, 162), and, in that same period, lodged a Second, Third,

1    and Fourth Amended Complaint (Dkt. No. 80, 135, 164).  Defendants, for their part, duly

2    opposed each motion for certification and amendment, and filed motions to dismiss (Dkt. Nos.

3    77, 168) and for summary judgment (Dkt. No. 109) at each opportunity.

4            July 2023 saw a minor breakthrough.  Plaintiffs' *fourth* motion for class certification was

5    granted *in part*.  The relevant order explained that "there is no practical class-wide method of

6    proof for most of the smorgasbord of wage and hour claims" brought by defendant, and instead

7    certified "three narrow issues" that, if adjudicated on a groupwise basis, would materially

8    advance the disposition of the litigation as a whole:

9                    *First*, when a promotional specialist chooses to work two or more
                     shifts in a single day, does the company policy denying a meal or
10                   rest break violate the California labor laws?

11                   *Second* . . . should the time in-between events in a single day be
                     deemed "on-the-clock"?
12

13                   *Third* . . . are promotional specialist entitled to reimbursement for
                     the "cost" of putting the company app "Brand Trend" on their
14                   phones, which is used to sign up for events and complete job
                     duties?
15

16   (Dkt. No. 185).

17           Plaintiffs abandoned the third issue outright due to the *de minimis* value of the related

18   claim (Dkt. No. 236 at 9).  Defendants, meanwhile, filed another round of motions to dismiss

     and for summary judgment (Dkt. Nos. 203, 214).
19

20           In January 2024, plaintiffs filed a motion for preliminary approval of a class action

21   settlement (Dkt. No. 216).  That motion was denied:  The class release agreed to by plaintiffs'

22   counsel was fatally overbroad, the class formula agreed to by counsel failed to account for

23   significant disparities in claim strength between members of the class, and the distribution of

24   attorney's fees did not comport with the Court's standing orders (Dkt. No. 225).  An amended

25   settlement adequately addressed each of those failures (Dkt. No. 227), and preliminary

26   approval was granted in June 2024 (Dkt. No. 231).

27           The amended settlement provides that, in return for a release of claims relating to the

28   certified issues — for meal and rest breaks or time in-between events when working two or

United States District Court
Northern District of California

1   more shifts in a single day, or business expenses relating to the cost of putting the company

2   app "Brand Trend" on the Arias Class members' cellular phones — defendants shall create a

3   non-reversionary $500,000 fund for the benefit of some 1,016 class members.  Attorney's fees

4   ($125,000), litigation costs and expenses ($54,730.00), settlement administrator costs

5   ($15,995.00), and service awards ($1,500) will all be paid from the fund, leaving $302,775 for

6   the class.  Of that sum, $100,000 has been set aside as a PAGA penalty (three-quarters going to

7   the LWDA, the remainder to the employees covered by PAGA claims).  The remainder —

8   $202,775 — will be distributed to class members.

9        Plaintiffs now move for final approval of the class action and PAGA settlement, while

10   plaintiffs' counsel seeks attorney's fees and costs (Dkt. Nos. 233, 236).  This order follows full

11   briefing and oral argument.

### ANALYSIS

### 1.   MOTION FOR FINAL APPROVAL

15        "The class action device, while capable of the fair and efficient adjudication of a large

16   number of claims, is also susceptible to abuse and carries with it certain inherent structural

17   risks."  *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982).  A

18   district court may grant approval of a settlement that will bind class members only after a

19   hearing and only upon a finding that it is fair, reasonable, and adequate.  FRCP 23(e).

20        The Rule 23(e)(2) analysis is guided by the eight *Churchill* factors: (1) the strength of

21   plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3)

22   the risk of maintaining class action status throughout the trial; (4) the amount offered in

23   settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

24   experience and views of counsel; (7) the presence of a governmental participant; and (8) the

25   reaction of the class members of the proposed settlement.  *In re Bluetooth Headset Prods.*

26   *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

27        Rule 23(e)(2) itself requires a district court to take up an additional set of factors.  FRCP

28   23(e)(2)(A)–(D).  To find that a settlement is fair, reasonable, and adequate, a district court

United States District Court
Northern District of California

4

1    must assess whether:  (A) the class representatives and class counsel have adequately

2    represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided

3    for the class is adequate; and (D) the proposal treats class members equitably relative to each

4    other.  Other relevant factors that will be considered are those listed in the judge's notice of

5    factors to be evaluated for any proposed class settlement (Dkt. No. 14).

6        In short, in consideration for the dismissal of this action with prejudice and a release of

7    claims related to the three issues certified by the Court, defendant has provided a non-

8    reversionary common fund totaling $500,000, from which class members will be paid.  This

9    order finds the settlement fit for final approval.

10           **A.    THE *CHURCHILL* FACTORS.**

11       The eight *Churchill* factors collectively support settlement.

12       *First*, this did not start as, and is not now, a strong case, as evidenced by plaintiffs'

13   struggles in certifying a class.  Plaintiffs' *fourth* bite at that apple resulted in the certification of

14   three "narrow issues" that were amenable to resolution of using defendant's class profile data,

15   in hopes of advancing the disposition of the litigation as a whole.  The order that certified those

16   issues held that "fatal dissimilarity amongst potential members" of the class meant that "there

17   is no practical class-wide method of proof for most of the smorgasbord of wage and hour

18   claims" asserted in plaintiffs' Fourth Amended Complaint (Dkt. No. 185 at 4-5).  Even those

19   narrow issues certified were not out of the woods.  Plaintiffs abandoned the third due to the *de*

20   *minimis* nature of the potential recovery, while defendants promptly filed motions seeking

21   summary judgment as to the first and second.

22       *Second*, the risk, expense, complexity and likely duration of further litigation supported

23   settlement.  As noted above, plaintiffs' path to this point was a treacherous one, and much

24   treachery lay ahead still.

25       *Third*, the risk of maintaining class action status supports settlement.  The order

26   certifying *issues* for class adjudication, quoted above, laid out the undersigned's doubts that

27   plaintiffs would manage at any point to certify claims for class adjudication.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Fourth*, the amount offered supports settlement. Plaintiffs' counsel provides a reasonable maximum potential damages estimate of $934,585 for the class (Dkt. No. 236). Defendants continue to dispute that plaintiffs are entitled to a bulk of those damages given the narrow scope of the issues certified. Given the pitfalls that lay ahead, a settlement representing an almost 45% recovery is an acceptable result. The terms of the settlement are appropriately tailored to each member's claim, such that the bulk of funds will go to those members who present particularly strong claims (*i.e.*, those who worked the most multiple-shift days).

*Fifth*, the extent of discovery and the stage of the proceedings support settlement. The parties have endured nearly six years of litigation. Plaintiffs have filed four complaints and four motions for class certification. Defendants have fully briefed and argued motions to dismiss and summary judgment, and yet another summary judgment motion was pending at the time of settlement. Class counsel conducted Rule 30(b)(6) depositions, the plaintiffs themselves sat for deposition, and thousands of pages of evidence and timecard records were exchanged by the parties. Counsel and plaintiffs have sufficient information to make an informed settlement decision.

*Sixth*, the experience and views of counsel support settlement. Counsel for both parties are sufficiently experienced in complex litigation and class actions generally, and employment and wage and hour disputes specifically. Defense counsel is silent, though the unopposed nature of the motions implies that they, too, consider the settlement reasonable.

*Finally*, the reaction of the class members to the proposed settlement favors settlement. Over 1,000 class members were given notice of the settlement in June, not one objected or opted out.

In sum, the *Churchill* factors support final approval of the settlement.

### B.   THE RULE 23(E)(2) FACTORS.

Rule 23(e)(2), as amended in 2018, requires the district court to go beyond the Churchill factors. See *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). In order to find that a settlement is fair, reasonable, and adequate, a district court must consider whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was

6

negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.  This order evaluates these factors to the extent not considered in the Churchill analysis above.

*First*, class counsel and the class representatives have represented the class adequately. As noted above, the relief secured is a substantial portion of what could have been achieved had plaintiffs been successful at trial.  *Second*, the settlement agreement is the product of arms-length negotiations conducted through mediator Mark Peters.  *Third*, the relief is adequate, taking into account, as required:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, as modified by this order; and (iv) any agreement required to be identified under Rule 23(e)(3). *Fourth*, the settlement treats class members equitably relative to each other, distributing funds on a *pro-rata* basis.  The highest payment to an individual member is estimated to be about $5,000, while the average sits at approximately $266 (Dkt. No. 236 at 10).  That disparity is driven by the number of double shifts each member worked in the relevant period and accurately reflects the recovery each is owed.

### C.   THIS COURT'S FACTORS.

A prior order laid out fourteen factors that would be analyzed in the event of a proposed class settlement, some of which overlap with factors already considered (Dkt. No. 14).  This order evaluates these factors to the extent relevant to the settlement at issue and not considered in the *Churchill* and Rule 23(e)(2) analyses above.

These, too, favor approval.   The settlement agreement does not contain an agreement as to attorney's fees or costs.  The class has not been impermissibly expanded to include irrelevant claims or persons.  The claim release is narrowly tailored, capturing only those claims that are reasonably related to the three narrow issues certified for class adjudication. The settlement also conforms to the "best approach" to claim procedure, calculating and cutting checks to class members alongside a notice that cashing is deemed to be acceptance. The settlement fund is non-reversionary:  unclaimed funds from uncashed settlement checks

1    will be transferred to the California Controller's Unclaimed Property Division in the name of

2    the Arias Class Member and/or Cipolla PAGA member.

3        In sum, these factors further support final approval.  As such, for the foregoing reasons,

4    final approval of the class settlement is hereby **GRANTED**.

5                    ***D.***     ***PAGA SETTLEMENT.***

6        A plaintiff who brings a PAGA claim "does so as the proxy or agent of the state's labor

7    law enforcement agencies," and, as a result, "a judgment in an employee's action under the act

8    binds not only that employee but also the state labor law enforcement agencies." *Arias v.*

9    *Superior Ct.*, 46 Cal. 4th 969, 986 (2009).  "It is thus important that when a PAGA claim is

10   settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the

11   underlying purpose of the statute to benefit the public." *Ibid*.

12       For the reasons stated above with respect to the class action settlement, the PAGA

13   settlement is meaningful and consistent with the statute's purpose of benefitting the

14   public.  The PAGA penalty is also reasonable.  The parties have agreed to a PAGA penalty of

15   $100,000, to be taken out of the gross fund (Dkt. No. 236-1 at 7).  Under California Labor

16   Code Section 2699(i), 75% ($75,000) will be paid to the LWDA, and 25% ($25,000) will be

17   disbursed to the PAGA members, distributed *pro rata*, based on the total number of events

18   worked by the PAGA member during the relevant period.

19          **2.**     **MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS.**

20                   ***A.***     ***ATTORNEY'S FEES.***

21       "Where a settlement produces a common fund for the benefit of the entire class, courts

22   have discretion to employ either the lodestar method or the percentage-of-recovery method."

23   *In re Bluetooth* 654 F.3d at 942.  This order follows the majority of courts in applying the

24   percentage-of-recovery method.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

25   1301, 1311 (9th Cir. 1990) ("Although statutory awards of attorneys' fees are subject to

26   'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is

27   calculated as a percentage of the recovery.").  In our circuit, courts "calculate 25% of the fund

28   as the 'benchmark' for a reasonable fee award," and consider upward or downward departures

United States District Court
Northern District of California

8

in light of any "special circumstances." *In re Bluetooth*, 654 F.3d at 942; *Arizona Citrus*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). The percentage figure, like a lodestar calculation, "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Our court of appeals has provided a number of factors that may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048–50. Counsel lays claim to a quarter of the common fund, which serves as the benchmark in our circuit. That fee is appropriate.

*First*, the result achieved and the risk of litigation support the requested fee in light of the significant difficulties faced in getting to this point, and the lingering doubts regarding the viability of classwise resolution going forward, both addressed at length above.

*Second*, the skill required, and the financial burden carried by the plaintiffs also supports the requested benchmark fee. Counsel have actively litigated his matter for nearly six years, and have been dogged in their attempts to certify a class and attain recovery for plaintiffs.

*Third*, awards made in similar cases likewise support counsel's request. Counsel seeks the benchmark, and similar wage-and-hour class actions typically generate attorney's fees in that very ballpark.

*Finally,* the lodestar cross-check supports counsel's requested fee. Courts calculate a lodestar "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," and then adjusting upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors. *In re Bluetooth*, 654 F.3d at 941. Where, as here, the lodestar is employed to cross-check a percentage-of-fund determination, courts may do a rough calculation. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) (Judge Margaret Morrow) ("In cases where courts apply the percentage

method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

Counsel have provided detailed billing records reflecting each hour billed by the attorneys and paralegals involved in this matter (Dkt. Nos. 240, 241). The highest hourly rates belong to the named partners, Edward J. Wynne, and Bryan McCormack, at $950 and $750 an hour, respectively. This order accepts those rates for the purposes of a rough crosscheck, without endorsing their reasonableness or propriety. Associates and paralegals billed at lower rates. All told, counsel's records reflect over 2,700 hours worked over the course of the last six or so years, resulting in total attorney's (and paralegal's) fees north of $1,500,000. The amount sought, 25% of the total fund, constitutes a small fraction of that lodestar.

Counsel's requested fee — 25% of the gross fund — is granted, despite the misgivings stated by the Court during oral argument.

### B.    COSTS.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund. To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses — including reasonable travel expenses — in wage-and-hour class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (Judge Jacqueline Scott Corley) (internal quotations and citations omitted). Counsel has submitted a list of itemized costs totaling $54,730, including costs for travel, mediation, depositions, postage, and court filing fees. These are reasonable litigation expenses incurred for the benefit of the class, and reasonably proportionate to the nature of the litigation, benefits obtained, and attorney's fees granted. Counsel's request for reimbursement of litigation costs of $54,730 is **GRANTED**.

### C.    CLASS REPRESENTATIVE SERVICE AWARDS.

Counsel seeks a $500 service award for each of the three named plaintiffs (Jamie Arias, Felicia Cipolla, and Alexis Wood), totaling $1,500. Named plaintiffs each sat for deposition, cooperated in responses to multiple sets of written discovery, and so forth. Counsel estimates that each spent at least 25 hours prosecuting this matter. The requested awards are **GRANTED**.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

It is hereby ordered as follows:

1.  The settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants, that it is the product of good faith, arms-length negotiations between the parties, and that the settlement is consistent with public policy and fully complies with all applicable provisions of law.  Final approval of the class settlement is therefore **Granted**.

2.  This order hereby awards plaintiffs' counsel attorney's fees of $125,000 and $54,730 in litigation costs and expenses, to be paid from the settlement fund.  Plaintiffs' counsel shall be awarded the $54,730 as well as 50 percent of the attorney's fees now; the remaining 50 percent may be recovered only after counsel certifies that the fund is completely wound up.  Administrator costs totaling $15,995 are approved to be paid from the fund.  If problems do arise, and if management of this fund so necessitates, any shortfall in funds to pay class members or the administrator may be deducted from the unpaid attorney's fees.

3.  Named plaintiffs Jamie Arias, Felicia Cipolla, and Alexis Wood are each awarded a service award of $500, totaling $1,500, to be paid from the settlement fund.

4.  The Court retains continuing jurisdiction over the class action, named plaintiffs, the class, and defendant for four years from the date of entry of this order in order to supervise the implementation, enforcement, construction and interpretation of the revised settlement agreement and this order.

**IT IS SO ORDERED.**

Dated:  October 28, 2024.

WILLIAM ALSUP
United States District Judge

11